CASE 46—PETITION EQUITY—OCTOBER 6.

# Churchill v. Reamer, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. SEPARATE ESTATE DURING COVERTURE, AT THE DEATH OF HER HUSBAND, VESTED AGAIN IN FEE IN THE WIFE, IN THIS CASE.

Land held in fee by an unmarried woman was vested in a trustee for her sole and separate use during coverture, by an ante-nuptial deed executed by her and her intended husband. The deed provided that if she should survive her husband, the estate should revert to her, "free and acquitted of the trust; and should the said Salina die leaving issue; living the said Lawrence, then the issue shall take the property," etc. *Held*, that as the wife Salina survived her husband Lawrence, she took the property free of any trust, and held it as though the deed of trust had not been made. See opinion for a discussion of the effect of the words in the deed quoted above, showing their proper punctuation and construction, and the application of the rule of construction that every word must have its effect, etc.

2. Being so seized of the land in fee after the death of her first husband, she married a second time, and died, leaving her second husband and

three children by the first and one by the second marriage. The child by the second marriage having died in infancy, the second husband became entitled by the curtesy to a life-estate in the wife's land; but he inherited no part thereof upon the death of his child, because the child inherited from its mother.

3. A surviving husband takes nothing by the curtesy in land held in trust for the benefit of his wife during her life, and at her death then in trust for her issue, and for such as shall arrive at twenty-one years of age, etc. The wife had only the use of this estate during life.

4. Land being held in trust for the sole and separate use of a married woman, "and after her death in trust for her children and heirs," and "if she should die without issue living at the time of her death, then the same to pass to her right heirs," etc., she took only a life-estate, and at her death her children took as purchasers under the deed, and not by descent from her; and at the death of one of the children in infancy his share passed to his father as his heir.

THOMPSON, BOOTH & KLINE, . . . . . For Appellant,

CITED

2 Metcalfe, 332, Johnson v. Johnson.

3 Marshall, 291, Moseby v. Corbin.

4 Monroe, 205, Moore's heirs v. Howe's devisee.

12 B. Monroe, 71, Northcut v. Whipp.

12 B. Monroe, 642, Carroll v. Carroll.

14 B. Monroe, 323, McKay v. Merrifield.

2 Metcalfe, 334, Johnson v. Johnson.

10 B. Monroe, 56, Prescott v. Prescott.

10 B. Monroe, 94, Black v. Cartmell.

Revised Statutes, section 9, chapter 30.

Revised Statutes, section 10, chapter 80.

BODLEY & SIMRALL, . . . . . . . . For Appellee,

CITED

Revised Statutes, section 9, chapter 30.

10 B. Monroe, 94, Black v. Cartmell.

JUDGE PETERS DELIVERED THE OPINION OF THE COURT.

This suit in equity was brought by Job M. Reamer and Lizzie L., his wife (late Lizzie Lawrence), Elias D. Lawrence and Benjamin H. Lawrence—the two last-named persons being infants, who sue by their next friend and statutory guardian,

VOL. VIII.—18

Thomas H. Crawford — and said Crawford, against John Churchill and others for partition of certain real estate, consisting of houses and lots in the city of Louisville, and also lands in Jefferson County, which plaintiffs below, appellees here, allege belonged to the mother of Mrs. Lizzie Reamer and the two Lawrences—the late Mrs. Salina S. Churchill, wife of appellant—and at her death descended to her said children, her only heirs.

Appellant claiming as surviving husband of Mrs. Churchill, and as heir to a child, the offspring of that marriage, who died after his mother, in infancy and unmarried, certain interests in said real estate, the nature of which will be hereafter specifically set forth, was made a defendant, and the court below having adjudged adversely to his several claims, he now asks a reversal of that judgment.

The property sought to be divided consists of eight distinct parcels, two of which were allotted to Mrs. Churchill, then Miss Salina S. Gray, by the commissioners appointed by the Louisville Chancery Court to partition the real estate of the late John T. Gray among his children and devisees, of whom said Salina was one, a suit having been brought in said court for that purpose.

These two parcels she and Benjamin H. Lawrence, in contemplation of a marriage between them, and which was soon thereafter consummated, on the 3d of November, 1847, conveyed to Peter D. B. O. Gray and others on certain trusts expressed in the deed in the following language in the *habendum*, to hold for the sole and separate use of the said Salina for and during coverture: "And so that the said Lawrence shall have no power, or control over the same, and so that the same shall not be subject to his debts, liabilities, or engagements, and so that the said Lawrence and Salina can not sell, alien, convey, mortgage, or incumber the same, or any part thereof; and so that the said Lawrence and Salina can not jointly

or severally sell, mortgage, incumber, or ·in any way antici-
pate the rents, issues, profits, and hires thereof.  Should the
said Lawrence die leaving the said Salina, the trust hereby
created is to cease, and the property herein conveyed revert
to the said Salina free, and acquitted of the trust; and
should the said Salina die leaving issue; living the said
Lawrence, then the issue shall take the property; but if the
said Salina shall die without issue, she shall have full right
and power to dispose of said property by last will and testa-
ment, or an instrument of writing in the nature of a last will
and testament."

The contest as to the two lots conveyed by this deed arises
out of the last paragraph quoted, and that controversy must
be settled by giving to the words composing that paragraph
the meaning that the grantor intended to express by them, to
be ascertained from the context of the whole instrument.

It has already been stated that Mrs. Churchill was at the
date of the deed the owner in fee of the lots, and by its terms
it is provided that if she survived Lawrence, her first hus-
band, the trust thereby created was to cease, and the property
was to revert to her *free and acquitted of the trust*.  She did
survive Lawrence, and some time after his death married the
appellant.

In the light of the foregoing provision in the deed and the
fact just stated, it is difficult to conceive how any question
could arise as to the nature and extent of her estate in these
lots; and certainly none can arise unless there is something
in the subsequent part of the deed which qualifies that clause
and restricts the right which it would otherwise secure to her;
and that the learned counsel for appellees insists is done by
the following sentence in the deed, which we again quote:

"And should the said Salina die leaving issue living the
said Lawrence then the issue shall take the property but if
the said Salina shall die without issue she shall have full

right and power to dispose of said property by last will and
testament, or an instrument in the nature of a last will and
testament."

The whole sentence is given here without punctuation, be-
cause there is some controversy between counsel how it should
be punctuated, and its meaning might depend somewhat on the
manner that is done. If the *comma* be placed immediately after
the word "living" and connect it with the word "issue" im-
mediately preceding it, then such issue would take under the
deed, and not through the mother. But that mode of punctu-
ation and construction leaves the words "the said Lawrence"
in the sentence without meaning and useless; but to meet and
overcome that difficulty counsel insist that the word "by"
should be added, or *interpolated,* before the words "the said
Lawrence," so as to read, "should the said Salina die leaving
issue living, *by* the said Lawrence," etc. No reason is shown
to authorize the arbitrary insertion of a word in the sentence.
It is not alleged nor proved that the original deed contained
that word; and if the punctuation is allowed as contended for,
and the word "by" not added, the words "the said Lawrence"
must be rejected as surplusage, which would violate the rule
of construction that every word in the instrument is to have its
effect, if an effect can be given to it not inconsistent with the
general intent of the whole instrument when taken together,
and no word is to be rejected unless there can not be a rational
construction given to the instrument with the words as they
are found. This rule is generally regarded as applicable to
the construction of wills, but it is equally applicable in the
construction of deeds and other instruments. There is no
difficulty in construing this instrument by conforming to that
rule, and in doing so give to it the meaning intended by the
grantors. Let it be written and punctuated thus: "And should
the said Salina die leaving issue; *living the said Lawrence,*
then the issue shall take the property."

The meaning when thus written is too obvious to admit of the slightest doubt, nor is it necessary to transpose a solitary word; but by the transposition of one word only the meaning will be equally but not more plain, making it read thus, "the said Lawrence living." The construction here given is consistent and in perfect harmony with the preceding and succeeding sentences of the whole paragraph, which provides for three states of case: *First*, how the property shall go in case said Salina survives her *then* husband, and then dies, leaving issue; *second*, how it shall go if she shall die leaving her said husband and issue surviving her; *and lastly*, what powers she shall have over the property in case she died without issue and in the life-time of her said husband.

Having survived her first husband, she took the property free of any trust, and held it as though no deed had ever been made; and by her after-marriage with appellant, by whom she had a living child, and being seized during coverture, he became entitled by the curtesy to a life-estate in said property; but he inherited no part thereof upon the death of his child, because the child inherited from his mother.

The lots designated as the third and fourth parcels were held in trust for the benefit of Mrs. Churchill during her life, and at her death then, by the terms of the deed, in trust for her issue, and for such as shall arrive to twenty-one years of age; and if none of her issue should attain that age, then the estate was to go to the heirs of Mrs. Mary Gray. The wife of appellant had only the use of this estate during life, consequently he took nothing by the curtesy. And as it is not shown that any of the issue had arrived at twenty-one years of age when his child died, the child had no estate in the property which the father could inherit.

As to the eighth parcel of land, it was held in trust for the sole and separate use of Mrs. Churchill, "and after her death in trust for her children and heirs;" and "if she should die

without issue living at the time of her death, then the same to pass to her right heirs," etc.

By this instrument Mrs. Churchill took only a life-estate, and at her death it went to her children. (Turman v. White's heirs, 14 B. Mon. 560.) Consequently the child by Churchill, having survived his mother, took as purchaser under the deed and not by descent from her, and on his death his share of that portion of the estate to which he was entitled passed to appellant as his heir.

Wherefore the judgment is reversed, and the cause is remanded with directions to render judgment as herein indicated, and for further proceedings consistent with this opinion.