Louisville Presbyterian Theological Seminary, &c. v. Fidelity Trust & Safety Vault Company, Exr., &c.

CASE 48—ACTION BY THE EXECUTOR OF FLORENCE IRVIN BOTTO, DECEASED, AGAINST LOUISVILLE PRESBYTERIAN THEOLOGICAL SEMINARY FOR A CONSTRUCTION OF THE TESTATRIX' WILL.—MAY 16.

# Louisville Presbyterian Theological Seminary, &c. v. Fidelity Trust & Safety Vault Co., Exrs., &c.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS DIVISION.

JUDGMENT CONSTRUING WILL AND DEFENDANTS APPEAL. AFFIRMED.

WILLS—ABATEMENT OF LEGACIES—RESIDUARY LEGATEES—REMAINDER FALLING INTO RESIDUUM.

Held: The rule that residuary legatees shall receive nothing until all the general legacies have been paid in full applies where it is provided that a fund, the income of which is to be paid to a certain person for life, shall, upon his death, go to the residuary legatees, naming them, "as part of the residuum," under the residuary clause; and, therefore, the estate being insufficient to pay the general legacies in full, and all of them having been abated, including the legacy referred to, that legacy, upon the death of the life tenants, goes to make up the other general legacies until they have been paid in full, before the residuary legatees are entitled to receive any part thereof

THOMAS W. BULLITT AND WM. MARSHALL BULLITT, FOR APPELLANTS.

This is an appeal from a judgment construing (at the executor's request) certain clauses in the last will of Mrs. Florence Irvin, afterwards Florence Irvin Botto.

Louisville Presbyterian Theological Seminary, &c. v. Fidelity Trust
& Safety Vault Company, Exr., &c.

## STATEMENT OF THE CASE.

By the will of Jas. F. Irvin, his widow, Florence Irvin, was given the power by last will to dispose of his estate.

Acting under that general power of appointment, Florence Irvin, on January 8, 1896, executed her last will. Thereafter on July 1, 1897, she married Wm. M. Botto, and died childless on February 12, 1900; and her will was duly probated under her then married name of Florence Irvin Botto.

On April 13, 1901, the Fidelity Trust & Safety Vault Co. as executor of that will brought this action for a settlement of the estate, and among other things set forth a question that had arisen, prayed for a construction of the will and for directions as to its action thereunder. The averments of the petition were admitted by all parties.

A purely legal question being thus presented, the lower court rendered judgment fixing the rights of the parties, from which this appeal is taken.

For convenience (and to distinguish her from Mrs. Cloteal Botto, mother of Wm. Botto) the testatrix, Florence Irvin Botto, will be designated as Mrs. Irvin—the name under which her will was executed.

## TERMS OF MRS. IRVIN'S WILL.

She left legacies to twenty-one persons and corporations aggregating $236,000.

Clauses 1-2 direct the payments of debts and care of the family burial vault.

Clause 3 makes various specific legacies of furniture, jewelry, plate, personal effects, etc.

Clauses 4-19 give sixteen general or pecuniary legacies, aggregating $182,000, as follows:

| | |
|---|---|
| Belle C. McVay | $15,000 |
| Philip T. Chinn | 3,000 |
| Second Presbyterian Church | 10,000 |
| Chas. R. Hemphill | 15,000 |
| Home of the Innocents | 5,000 |
| Young Men's Christian Association | 10,000 |
| Louisvile Presbyterian Theological Seminary | 10.000 |
| Polytechnic Society of Kentucky | 10,000 |
| Cloteal B. Botto | 15,000 |
| Rodman Grubbs | 15,000 |
| Irvin Lindenberger | 10,000 |

Louisville Presbyterian Theological Seminary, &c. v. Fidelity Trust
& Safety Vault Company, Exr., &c.

Anna Foster ..........................................$ 8,000
Louisville Presbyterian Orphanage (in trust)............ 10,000
Home for Infirm Colored People (in trust)............. 1,000
Norton Memorial Infirmary (in trust).................. 10,000
Wm. M. Botto (in trust).............................. 35,000

                                              $182,000

Clauses 20-24, in exactly similar language, give to the Fidelity Trust & Safety Vault Co., as trustee, the following sums in trust to pay the income thereof to the following named persons during their respective lives:

Clause 20 to Jane Ballard on..........................$ 6,000
Clause 21 to Alex. McHarry on........................ 12,000
Clause 22 to Jane Jackson on ........................ 12,000
Clause 23 to Jemima Johnson on...................... 12,000
Clause 24 to Mary Costello on........................ 12,000

Total ........................................ $54,000

With the further provision in each clause that "At her (or his) death said fund shall go to Mrs. Belle McVay, Mrs. Cloteal Botto, and the Louisville Presbyterian Theological Seminary as part of the residuum under the 26th clause of this will."

Clause 26 reads as follows:

"All the balance of said estate in possession, reversion, and remainder, including both my own and the estate which I have the right to dispose of under the will of my said husband, I devise and bequeath to Mrs. Belle McVay, Mrs. Cloteal Botto, and the Louisville Presbyterian Theological Seminary, in fee simple absolute, in the proportions of one-eighth (⅛) to Mrs. Belle McVay, one-eighth (⅛) to Mrs. Cloteal Botto, and three-fourths (¾) to the Louisville Presbyterian Theological Seminary."

Jane Jackson (life tenant under clause 22) died before Mrs. Irvin.

Alex. McHarry (life tenant under Clause 21) died after Mrs. Irvin and after the filing of the petition herein.

Jane Ballard, Jemima Johnson, and Mary Costello (the other life tenants) are still alive.

### THE QUESTION INVOLVED.

The legacies given to the twenty-one legatees aggregate $236,000, while the net value of the estate (after payment of debts, costs, expenses, etc) will be less than $160,000.

It is therefore obvious that none of the legacies will be paid in full, and that there must be an abatement all around.

On behalf of Mrs. McVay and the seminary as "remainder-men" under clauses 20 to 24 it was insisted that at the deaths of the respective "life tenants" (Jane Jackson, Alex. McHarry, etc.) the funds named therein went absolutely to Mrs. McVay, Mrs. Cloteal Botto, and the seminary in the proportions designated in clause 26, viz.:   Mrs. McVay, one-eighth, Mrs. Botto, one-eighth, seminary, three-fourths.

: On the other hand, the other legatees (Norton Infirmary, etc.) insisted that as each life tenant died the fund was to be used to make a further dividend on all the remaining legacies (including the other trust funds) until they should have been paid in full—and that only after the whole $236,000 of legacies were paid in full (which will never be) should Mrs. McVay and the seminary receive the "remainder" of the trust funds.

In view of those conflicting claims, the executor was in doubt as to whom it should pay the "remainder" of the trust funds after the respective deaths of the "life tenants," and therefore in its suit for a settlement of the estate, the executor asked for a construction of the will and for direction on the following points:

First.   Whether the $12,000 (or rather the abated pro rata thereof) left to Jane Jackson for life (she being already dead) should go to Mrs. McVay, Mrs. Botto, and the seminary in the proportions named in clause 26, or whether it should become a part of the estate generally for distribution among all the legatees ratably.

Second.   Whether the several "trust funds" set apart for Jane Ballard, Alex. McHarry, Jemima Johnson, and Mary Costello under clauses 20, 21, 23, and 24 should at the respective deaths of those "life tenants" go to Mrs. McVay, Mrs. Botto, and the seminary in the proportions named in clause 26, or whether they should be distributed as an additional dividend on all the legacies (including such of the "trust funds" as should still be alive.)

The lower court decided:

(1) That as to the Jane Jackson fund (under clause 22) Mrs. McVay, Mrs. Botto, and the seminary should take nothing, and that no such fund should be set aside at all.

(2) That as to the Alex. McHarry fund (under clause 31) Mrs. McVay et al. should take nothing, and that from the date of Alex. McHarry's death the fund set apart for him should

340      KENTUCKY REPORTS.     [Vol. 113

Louisville Presbyterian Theological Seminary, &c. v. Fidelity Trust
& Safety Vault Company, Exr., &c.

be treated as a part of the estate for general distribution among
all the remaining legatees.

3. That as to the Jane Ballard, Jemima Johnson, and Mary
Costello funds (under clauses 20, 23, 24) at their respective
deaths the funds should be applied to the further payment of all
other legacies (including such life tenants as may be alive at
the date of such death), with interest in full.

The result of the decision is that Mrs. McVay *et al.* will get
nothing under clauses 20-24, although each one expressly de-
clares that at the death of the life tenant "said fund shall go
to Mrs. Belle McVay, etc."

From that judgment Mrs. McVay and the seminary have ap-
pealed.

Mrs. Cloteal Botto declines to unite in the appeal for the ob-
vious reason that the dividend from these "trust funds" on
the $50,000 of legacies to herself and her son, Wm. M. Botto,
will greatly exceed the one-eighth which she would receive as
legatee under those clauses respectively.

Our contention is as follows:

In clauses 20-24 of her will Mrs. Irvin directs, respecting
the funds set apart for the use of five persons during life, that
as the life tenants respectively shall die "said funds shall go
Mrs. McVay, Mrs. Botto, and the seminary as part of the res-
iduum under the 26th clause of this will."

First. Appellees claim that the "remainder" in these respec-
tive funds are thus required to pass as residuary estate (in the
purely technical sense) under and by force of the 26th, that
is, the residuary, clause of the will.

Appellants object that this construction is untenable, because:

(1) In effect, it nullifies and treats as surplusage the bequests
of those remainders as contained in said clauses 20-24.

(2) It implies a contradiction between the former and latter
parts of the several bequests of the trust funds in said clauses
20-24.

The will first directs that these funds, as a whole, shall go
to the legatees named.

According to appellees' construction the subsequent words "as
part of the residuum" nullifies the previous direction and re-
quires that only a part, that is, the residue after payment of
all other legacies, shall go to those legatees.

Second. Appellants' claim:

(1) That, as the natural construction of the language used
(apart from the context of the will), the "remainders" of the
trust funds pass by force and operation of clauses 20-24, and

Louisville Presbyterian Theological Seminary, &c. v. Fidelity Trust
& Safety Vault Company, Exr., &c.

not under the residuary clause; that they pass not "as a part
of the residuum" in the sense of being restored to the "general
estate" for payment of abated legacies, but as an addition to
what Mrs. Irvin contemplated would be a certain and sub-
stantial, though indeterminate, residuum of her general estate,
independently of the trust funds.

(2) That this construction is emphasized and enforced by the
fact, shown by other clauses of her will, that Mrs. Irvin exe-
cuted her will in the clear conviction that, after payment of all
general legacies (including payment to the trustee of the princi-
pal of the trust estates), there would be a substantial residue
of her general estate for division between her residuary lega-
tees; and that, in giving the trust funds "as a part of the resi-
duum," she contemplated that 'residuum' as a certain, substantial
fund, to which the trust funds would be added.

(3) That appellants' construction is enforced and emphasized
by the following facts gathered from the other clauses of the will,
viz.:

She gave to Mrs. McVay, Mrs. Botto, and the seminary, each,
a general legacy (apart from these remainders) equal to or larg-
er than any other general legacy, and she expected and intended
that the bequest of the $54,000 (in remainder) should be in ad-
dition to the general legacies.

To illustrate, she expected and intended that Norton Infirmary
should receive $10,000; and that the seminary should receive,
not only a similar sum of $10,000, but, in addition thereto and in
addition to the general residuary, the further sum of three-
fourths of $54,000 equal $40,500.

If the estate had been what Mrs. Irvin believed and contem-
plated, the seminary would have received that additional sum.

Mrs. Irvin did not contemplate nor intend that because of an
unexpected deficiency in her estate to pay all legacies in full,
the seminary should receive nothing in excess of the Norton In-
firmary. If she had contemplated such deficiency, it is more nat-
ural to suppose that she would proportionately have reduced
the general legacies and have left the seminary still a favored
legatee.

But in any event the will should be construed in the light of
what it shows that Mrs. Irvin in fact believed and contemplated.
It shows that she used the term "residuum" as representing a
positive, certain balance, and that, as such, she expected the
trust funds to become a "part" thereof, increasing it by the
sum of $54,000.

Third.   Authorities.

Farmer v. Mills is a distinct authority in favor of appellants.

Louisville Presbyterian Theological Seminary, &c. v. Fidelity Trust
& Safety Vault Company, Exr., &c.

The logical deduction from In re Lyne's estate is likewise
distinctly favorable to appellants' claim.

In Re Tootal's Estate is clearly distinguishable from the case
at bar, and in principle is not hostile to our contention.

The Wetmore cases, the only American cases cited, are, if
accepted as sound, conclusive in favor of appellants.

They are sound in that they enforce the real intention of the
testatrix.

### AUTHORITIES CITED BY APPELLANT.

Farmer v. Mills, 4 Russ, 86-87; Re Lyne's Estate, 8 L. R.
Eq., 482; Re Tootal's Estate, 2 L. R. Chy. Div., 628; Wetmore
v. N. Y. Institution, &c., 3 N. Y. Sup., 179; Wetmore v. N.
Y. Institution, &c., 56 Hun., 313; U. S. Trust Co. v. Black, 9
Misc., 653, 30 N. Y., 453; 83 Hun., 612; 146 N. Y., 1.

LEOPOLD & PENNEBAKER, ATTORNEYS FOR APPELLEE, ANNA O.
FOSTER.

In Kentucky it is settled that a residuary clause can become
operative only after all debts and legacies are paid. Cunningham
v. Cunningham, 18 Ben. Mon., 22.

Counsel for the residuary legatees contend, that this money is
specifically bequeathed to the residuary legatees. To make their
contention available, it would be necessary to strike out the
words, "as a part of the residuum under the twenty-sixth clause
of the will," from the fifth clause, in which these words occur.
We claim that the wording of clauses 20, 21, etc of the will,
refer to and are absolutely governed by clause 26, and that
clause 26 is and can be the only clause that governs. Kennon
v. McRoberts, 1 Am. Dec., 426; Beckman v. Bronson, 23 N. Y.,
298; Winston v. Webb, Philips Equity, 1.

O'NEAL & O'NEAL AND DODD & DODD, ATTORNEYS FOR MRS.
CLOTEAL B. BOTTO.

The question involved in this appeal depends upon the con-
struction of the 26th clause of the will.

It is manifest, from the face of the entire will, that the testatrix
intended to specifically dispose of several sums aggregating $236,-
000, before anything could vest under the 26th or residuary
clause.

It is further manifest that of this $236,000, $54,000 was intend-
ed to be paid over by her executor to the Fidelity Trust & Safety
Vault Co., in trust; and that the remainder interests in these
$54,000 life legacies, should go directly to the residuary legatees

Louisville Presbyterian Theological Seminary, &c. v. Fidelity Trust & Safety Vault Company, Exr., &c.

in the proportion named, and that the referee in the last clause of each of the several specific bequests to the 26th clause, was merely to indicate the proportions that these three parties should share in the said remainder, after the termination of the life estate of the specific legatees.

RODMAN GRUBBS AND RICHARDS & RONALD, ATTORNEYS FOR APPELLEES.

Where a testator directs that a certain amount shall be set aside, the income from which is to be paid to one for life, and thereafter the principal fund to go to three others as part of the residuum under the general residuary clause, the latter can take nothing thereunder until the debts and general legacies are first paid.

The bequests to Mrs. McVay, Mrs. Botto, and the seminary in each of the five clauses in question, are given to them as residuary legatees and not as specific legacies.

Our construction would distribute the funds pro rata among the general legatees including the appellants.

We claim that Mrs. Botto, Mrs. McVay, and the seminary are not "favored legatees" to the exclusion of the other general legatees, as urged by their counsel.

### AUTHORITIES CITED.

Nickerson v. Bragg (1899) 21 R. I., 296; Wetmore v. New York Institution for the Blind, 3 N. Y. Sup., 179; In re Tootal's Estate, 2 Ch. Div., 628; Porter v. Howe, 173 Mass., 521 (54 N. E., 255) nI re Lyne's Estate, L. R., 8 Eq., 482 (Eng). Arnold v. Arnold, 8 Eng., Ch., 441; Farmer v. Mills, 4 Russ, 86; Page on Wills, 919; Churchill v. Reamer, 8 Bush, 260; Childress v. Logan, 23 R., 1239.

OPINION OF TE COURT BY JUDGE DURELLE—AFFIRMING.

The Fidelity Trust & Safety Vault Company, as executor of the will of Florence Irvin Botto, brought suit for the construction of certain clauses of her will. By the will of James F. Irvin his widow, Florence, was given power by last will to dispose of his estate. She executed a last will under this power of appointment, married William M. Botto, died childless, and her will was duly admitted to

probate. She left legacies to 21 persons and corporations, aggregating $236,000. Clauses 1 and 2 direct the payment of debts and care of family vault. Clause 3 makes various specific legacies of jewelry and other personalty. Clauses 4-19 give 16 general or pecuniary legacies, aggregating $182,-000, as follows. Bell C. McVay, $15,000; Philip T. Chinn, $3,000; Second Presbyterian Church, $10,000; Chas. R. Hemphill, $15,000; Home of the Innocents, $5,000; Young Men's Christian Association, $10,000; Louisville Presbyterian Theological Seminary, $10,000; Polytechnic Society of Kentucky, $10,000 Cloteal B. Botto, $15,000; Rodman Grubbs, $15,000; Irvin Lindenberger, $10,000; Anna Foster, $8,000; Louisville Presbyterian Orphanage (in trust), $10,-000; Home for Infirm Colored People (in trust), $1,000; Norton Memorial Infirmary (in trust), $10,000; Wm. M. Botto (in trust), $35,000—$182,000. Clause 20 gives to the Fidelity Trust & Safety Vault Company, as trustee, $6,000, in trust, to pay the income thereof to Jane Ballard during her life, with the further provision that "at her death said fund shall go to Mrs. Belle McVay, Mrs. Cloteal Botto, and the Louisville Presbyterian Theological Seminary, as part of the residuum under the 26th clause of this will." Clauses 21 to 24, inclusive, in exactly similar language to that used in clause 20, provide for like trusts to the Fidelity Trust & Safety Vault Company in favor of Alex. McHarry, Jane Jackson, Jemima Johnson, and Mary Costello, to pay them the income upon $12,000 each during their respective lives, with the same provision for the disposition of the fund at their deaths, respectively. Clause 26 is as follows: "All the balance of said estate in possession, reversion, and remainder, including both my own and the estate which I have the right to dispose of under the will of my said husband,

I devise and bequeath to Mrs. Belle McVay, Mrs. Cloteal Botto, and the Louisville Presbyterian Theological Seminary, in fee simple absolute, in the proportions of one-eighth to Mrs. Belle McVay, one-eighth to Mrs. Cloteal Botto, and three-fourths to the Louisville Presbyterian Theological Seminary." Jane Jackson, the *cestui que trust* under clause 22, died before the testatrix. Alex. McHarry, the *cestui que trust* under clause 21, died after the testatrix, and after the original petition was filed in this case. The other *cestui que trustent* are still alive. While the legacies given to the 21 legatees aggregate $236,000, it appears that the net value of the estate, after the payment of debts, costs, etc., will be less than $160,000. The legacies must, therefore, abate.

On behalf of Mrs. McVay and the seminary, who may be termed remainder-men in clauses 20 to 24, inclusive, it is insisted that at the death of Jane Jackson and the other *cestuis que trustent*, who may be termed life tenants, the remainder, after abatement, on account of the deficiency in the estate, of the funds wherein they take a life interest, should go absolutely to Mrs. McVay, Mrs. Cloteal Botto, and the seminary, in the proportions designated in clause 26, viz., one-eighth to Mrs. McVay, one-eighth to Mrs. Cloteal Botto, and three-fourths to the seminary. On the other hand, the other legatees insist that, as each life tenant dies, the principal fund must go to pay the deficiency in the remaining legacies, including the other trust funds, under clauses 20 to 24, inclusive, and that it is only after the whole $236,000 of legacies are paid in full that the three remainder-men are entitled to any part of the funds held in trust under those clauses. As the estate is sufficient to pay only about 60 per cent. of the legacies, independent of the

346      KENTUCKY REPORTS.      [Vol. 113

Louisville Presbyterian Theological Seminary, &c. v. Fidelity Trust
& Safety Vault Company, Exr., &c.

sums named in these five clauses, and only about 78 per
cent. if those funds are used to pay the deficiency in the
general legacies, it is evident that, if the second contention
is sustained, the remainder-men will take nothing by virtue
of these clauses, except in so far as the legacies directly to
them are increased by those funds being used to make up
the deficit. The question for decision is the construction
of these five clauses,—20 to 24, inclusive. The chancellor
decided that Belle McVay, Cloteal Botto, and the seminary
were not entitled, under the twenty-second clause of the
will, to the fund devised to Jane Jackson for life, and that
no fund should be set aside for distribution under that
clause; that they were not entitled under the twenty-first
clause to the fund devised to Alex. McHarry for life, and
that the fund devised to him is to be treated, from the date
of his death, as a part of the estate for general distribu-
tion among all the legatees under the will; and that, at
the respective deaths of Jane Ballard, Jemima Johnson, and
Mary Costello, the funds held for their benefit should be
applied, ratably, to the payment in full of all the other
legacies, including those of such life tenant or tenants as
may be alive at the date of such death; and after the pay-
ment in full of all such legacies, with interest, the surplus is
to pass as residuary estate under the twenty-sixth clause
of the will. As before stated, there will be no surplus.
Mrs. McVay and the seminary have appealed. Mrs. Cloteal
Botto did not unite in the appeal, but by her counsel asks
the same construction which is desired by appellants.

The question for decision is, in what capacity do Mrs.
McVay and the seminary take the remainders after the
death of the life tenants? Do they take as residuary lega-
tees, receiving no part of the remainder left to them? or

do they, as remainder-men, take the remainders free from
the claims of the other general legatees?  The thanks of
the court are due to counsel for the manner in which they
have presented both sides of this question.  With great
ability counsel for appellants maintain the proposition that
Mrs. Florence Botto believed the estate devised would pay
in full all the legacies and leave a substantial residuum,
independently of the principal of the five trust funds, and
that the bequest of these funds to the three remainder-men
named was intended to be a gift thereof as a whole, in ad-
dition to that indeterminate, but certain, residuum.

The difficulty of the question before us arises in great
part from the fact that the testatrix did not believe the
estate to be insufficient to pay the legacies in full and leave
a residuum, and therefore made no provision to show what
legacies she desired to abate, or the proportion in which
she wished them to be abated, in the event the estate should
prove insufficient.  Her intention was, undoubtedly, that
each of the legatees should be paid in full.  She intended
that there should be a residuum, and that the residuum
should be apportioned between the residuary legatees in the
proportions stated.  But the estate was insufficient to pay
even the general or pecuniary legacies, and the court is,
therefore, confronted with a condition which the testatrix
did not consider at all.  The general rule of construction in
such cases is thus stated in Page, Wills, sec. 772: "Testa-
tor's will does not, however, often contain provisions direct-
ing the course in which legacies given shall abate, since
testator rarely contemplates the possibility of his estate
failing to pay his debts and legacies in full.  In the ab-
sence of specific provisions in the will, the law must pro-
vide in what order the different classes of legacies shall

abate. This result is reached by general rules which are intended to express and enforce the probable intention of the average testator. It is another of those difficult cases where the courts must determine the intention of testator upon a subject upon which he never had any intention. If testator's estate is sufficient to pay off all his legacies and devises in full after paying debts, the legacies given in the residuary clauses abate first. No payment can be made to residuary legatees until all other legacies have been paid in full. . . . The reason underlying this rule is that, as testator bequeaths in a residuary clause only that part of his property left after the payment of the bequests and devises previously given, his intention will be best given effect by using the residuum first in paying testator's debts. The purposes of all these rules is to approximate testator's intention as it would probably express itself if he had been aware of the actual relation of the value of his property to the amount of his debts, since it is impossible to give literal effect to the testator's intention." Now, it is contended for appellant that, in construing the word "residue" or "balance," the opinion of the testator that there would be a balance is sometimes given controlling influence. The case of In re Pittman's Estate, 182 Pa., 355, 38 Atl., 133, is cited as an illustration. There, the testator, owning a 135-acre farm and other estate, devised to Pittman 20 acres, to Johnson 30 acres, and to his widow the "balance" of all his property. Unexpected debts being proved against the estate, it was contended that the devise to the widow was a residuary one, whereas the devise to Pittman and Johnston were specific. But it was held that "the word 'balance' left to her the 85 acres of the farm, and every article of personal property, as specifically as if enumerated and de-

scribed at length. He does not leave to her 'a' balance, in the sense that she was to have what remained after payment of debts and legacies. She was to have 'the' balance, distinct and specific, after cutting off the two fields." So in Page v. Leapingwell, 18 Ves., 463, the testator directed that Mitford Castle should be sold for not less than £10,000; that £7,800 should go to various named objects, and the "overplus moneys" to Ann Pugh and T. H. Page. The castle brought only £7,000, and the court held that the gift of "overplus moneys" was not a mere residuary estate, but a specific gift of the difference between £7,800 and the £10,000 which the testator expected the castle to bring. It may be said that in neither of these cases are\ there used the words "residue," "residuum," or "residuary estate," which are recognized words of art having a distinct, legal meaning. In the Pittman case, moreover, there was presented the question of abating the provision which the testator had made for his widow in favor of comparative strangers.

It is contended, also, that the construction given by the chancellor compels the rejection as surplusage of the words "at her death said fund shall go to Mrs. Belle McVay, Mrs. Cloteal Botto, and the Louisville Presbyterian Theological Seminary, as part of the residuum, under the 26th clause of this will," because, without that language, five times repeated in clauses 20 to 24, inclusive, the remainder would have been undisposed of, except by the residuary clause, but would be effectually disposed of by that clause, the legatees thereunder taking such part as might not be required for the payment of other legacies; that each clause, each paragraph, and each word in the will should, if possible, be given some effect (Sneed v. Reardon, 1 A. K. Marsh, 217; Churchill v. Reamer, 8 Bush, 260); that the use of the same

language five times, in five distinct clauses indicates con-
clusively that they were expressive of some intention on
the part of the testatrix other than that expressed in the resi-
duary clause. It is further urged that the funds in which
life estates were given in the five clauses (20 to 24, inclu-
sive) were specific sums set aside, separate and distinct,
from her other estate, and held by a trustee, with the di-
rection that, at the death of the life tenants, "said fund
shall go to Mrs. Belle McVay, Mrs. Cloteal Botto, and the
Louisville Presbyterian Theological Seminary, as part of
the residuum under the 26th clause of this will;" that with-
out the limiting clause, "as part of the residuum," this
would constitute a clear and unqualified gift of the prin-
cipal funds as a whole to the parties named; that this mani-
fests an intention that those persons shall have those par-
ticular funds, as definite, separated, and identified parts of
the estate, and therefore the qualifying clause "as part of
the residuum," must be construed as a reference to the
twenty-sixth clause, for the purpose, merely, of ascertaining
the proportions in which the legatees are to take; and, fur-
ther, that when in the residuary clause she disposed of "all
the balance of said estate," she obviously meant the bal-
ance left after paying in full the legacies before provided
for, including the $54,000 of trust funds. And it is fur-
ther urged that, whereas she had given general legacies to
the Christian Association, to the Polytechnic Society, to
the Presbyterian Orphanage, to the Norton Infirmary, to
the Second Presbyterian Church, and to the appellant semi-
nary of like amounts in the preceding clauses of her will,
the appropriation of the greater portion of these trust funds
to the seminary showed a desire upon her part to make the
seminary a favored legatee; and it is unreasonable to con-

clude that, in the event of a deficiency of the estate, she intended to apply the whole of the trust funds, which formed the distinguishing mark of her favor to making the less-favored legatees equal with the one which she evidently intended to make superior.

The answer to many of these contentions is to be found in the fact that the will was drawn by a person skilled in such labors, and familiar with legal nomenclature; that technical terms are used, presumably with knowledge on the part of the testatrix and her advisers of the effect given to such language by the general rules of construction, in the event there should prove to be a deficiency of the estate. It is quite possible—it is, in fact, probable—that if she had known of the deficiency she might have cut out entirely a number of the general or pecuniary legatees. But she provided for all of the legatees in language which indicates an equal desire that each should have in full the legacy specified. So far as the general legacies are concerned, they must be placed upon the same footing, and share ratably in the estate.

She provides a residuary clause. That disposes of what is left after payment of the general legacies. If nothing is left, nothing is thereby disposed of. We are bound to presume that she knew this. In the five clauses under consideration, she provides that the residuary legatees are to take the remainders "as part of the residuum." It is of no use to speculate upon what she would have intended had she contemplated the deficiency which confronts the court. She had no intention about it. She did not consider the contingency. We must construe what she said, and we must construe it in the light of the recognized rules of construction, and not by speculation as to what she would have in-

tended had she foreseen the present situation. What she
said was that these funds should go as part of the residuum.
She said, further, they should go under the twenty-sixth
clause of the will.' If they go under the twenty-sixth clause
of the will, they go as residuum, and only after payment in
full of the general legacies. This was not a mere reference
to that clause to fix the proportions in which the legatees
were to take. Such a construction involves the absolute
rejection of the last phrase, "under the 26th clause of this
will." We must assume that if her intention had been
merely to fix the proportions, she would have used language
which would obviously have indicated such intention. These
words are in the will, "and no word is to be rejected, un-
less there can not be a rational construction given to the
instrument with the words as they are found." Churchill
v. Reamer, 8 Bush, 260; Childers v. Logan, 23 R., 1239, 65
S. W., 124. Nor is there anything to indicate a different
intention as to the disposition of these trust funds when
they become part of the residuum from that expressed in
the thirtieth clause, where the testatrix provides for the
mode of dividing the residuum; or from that of the thirty-
second clause, where she provides for the contingency of the
natural persons named in the twenty-sixth clause dying
without leaving descendants. The authorities which bear
upon this question are few, and not all of those cited shed
light upon the question. In Nickerson v. Bragg, 21 R. I.,
296, 43 Atl., 539, the testator, after making certain legacies,
provided: "If any of the persons named above in this
seventh item be not living at the time of the settlement of
my estate, then the share of that person or persons shall
be placed with the remainder of my estate." Two legatees
had died. There was a deficiency of funds. The court,

construing the will, said: "We see no reason to infer that
these legacies were to be taken out of the general rule and
made specific gifts to the remainder-men. The gift of a
residue is subject to the precedent claims upon the estate.
It is a gift of what remains after the debts and legacies
are paid. Tomlinson v. Bury, 145 Mass., 346, 14 N. E., 137,
1 Am. St. Rep., 464; Derby v. Derby, 4 R. I., 419. The
amount, therefore, of the lapsed legacies will go to the
fund for the general pecuniary legatees." The various
cases which arose in New York over the will of Mary Hope-
ton Drake are much relied on by counsel for appellants.
The will was five times construed by various courts. It
disposed of a very large estate, and contained many appar-
ently conflicting provisions. The executor became a de-
faulter and absconded. The estate proved insufficient to pay
all the sums bequeathed. One of the questions decided
upon the construction of a provision that, upon the death
of the life tenant of certain property bequeathed in the
trust, the property was "to fall into and be disposed of
as part of my residuary estate." Said Judge Van Brunt,
in his opinion in one of the cases (Wetmore v. Hospital, 56
Hun, 313, 9 N. Y., Supp., 753): "The question necessarily
presented here is, what residuary estate did the testatrix
intend? There seems to be in this will three residuary es-
tates. The first one mentioned is in the seventh clause, the
next one is in the commencement of the eighth clause, and
in the same clause, at the end thereof, we find the final res-
iduary clause." The cases are too long and complicated to
be here discussed with any degree of particularity. There
are some expressions used in the various opinions which
seem to favor appellees' contention. But it is sufficient to

say that, under the language used in that will, and by arguments drawn from its various provisions as to the probable intention of the testatrix, the various courts which construed it reached a conclusion which, on the whole, favors the contention of appellants here, and held that the remainder, which was directed to "form part of my residuary estate," was a gift of the remainder to four infants named in the latter portion of the eighth clause as "residuary legatees." Said the New York court of appeals, through Judge Peckham: "We can not say, as a matter of law, that testators always mean precisely and definitely the same thing when they use the same expression in different parts of their wills. It is a good rule to say that generally they do. It is always, however, a question of intention, and that intention the context or the facts surrounding the subject may show to be different in different places, although the same expression may be used in both." Some of the arguments by means of which the New York court reached its conclusion find no basis in the case before us. The reasons there given for the decision do not here exist, and in view of the peculiar circumstances of these cases we do not regard them as authority for us to depart from the general rule of construction in such cases. In the case of Porter v. Howe, 173 Mass., 521, 54 N. E., 255, the decision merely illustrates the general principle that a residuary estate is the residue which remains after the payment of the general legacies. An annuity was given by one clause of the will for life. There was a residuary clause, by which the remainder of the estate was to be distributed to two charities. The estate was insufficient to pay the general legacies. The court held that the gift to the residuary legatees was only of such part of the estate, if any, as remained after

the payment of all the previous legacies in full, and that the fund retained for the payment of the annuitant was to be used, upon her death, to make up the deficiency. These are all the American cases relied on.

Some English cases cited seem to have more or less application, though none of them is directly in point. In Farmer v. Mills, 4 Russ., 86, relied upon by both sides, annuities were given, to be respectively secured by investment of sufficient principal funds, with a direction that, "as the annuitants should die, the sums by which the annuities were secured should sink into and become a part of the residue of his estate." The residue of the estate was then devised to certain named persons. By a codicil it was directed that, in case there was not sufficient property to produce interest sufficient to pay the annuities, "an equal deduction be made from each annuity, ratably, according to its amount." The estate proved inadequate, and the court held that, on the death of an annuitant, the principal did not go to increase the other annuities to the amount specified in the will, but went direct to the residuary legatees, because the codicil showed that the annuitant who received a reduced annuity received all the testator intended he should receive in case of deficiency, and the principal sum which produced his annuity went to the residue, as it would have done if the property had been adequate to produce the sums given by the original will. The court said: "If the case had rested upon the will, the residuary legatees could have taken no benefit until the annuities were fully provided for." In Re Lyne's Estate, L. R., 8 Eq., 482, also cited by both parties, the testator made several general bequests, and gave to trustees £1,000, to be held for the benefit of Sarah Sands during life, and at her death, if child-

less, to "fall into and become part of his residuary estate." The "residue" was devised to named persons. By a codicil it was provided that, if the estate should be insufficient to pay all the legacies in full, such legacies should abate proportionately. The estate was insufficient, the £1,000 legacy was abated to £598, the life tenant died, and it was held that the fund must be paid to the legatees whose legacies had abated, to the exclusion of the residuary lega-tees.

It will be observed that in both of the English cases we have referred to the testator, by his codicil, showed that he contemplated and provided for the contingency of a deficit in the estate. In the one case this provision was held to alter the rule which would have applied had the provision for a deficit not been made, and to give effect to the will as if it had given the reduced sums specifically to the general legatees. In the Lyne case, however, the codicil providing for the case of a deficit was apparently held to merely em-phasize the general rule. The court there said: "In this case the language of the testator that the sum of £1,000 and all securities for the same, shall fall into and become part of his residuary estate, would be plain enough if there had been any residue; but, there being none, it is not so plain. The words of the codicil simply amount to this: That if the estate should be deficient, there should be per-fect equality amongst all the pecuniary legatees. He con-templated the exclusion of the residuary legatees alto-gether where he said, in case his moneys or securities for them at the time of his decease should be insufficient for the payment of the legacies, they should abate proportion-ately. The testator has excluded the residuary legatees from taking anything until there should be a residue, and,

there being no residue until the legacies have been paid in full, this fund belongs to those whose legacies have been abated. Upon the whole, I think that this fund must go amongst the legatees proportionately." While apparently in conflict, both cases seem to support the contention of appellee in the case now being considered. Nor are we able to see such distinction between the setting apart of a fund with a gift of the income thereof for life and the gift of an annuity with a provision for setting apart and investing a fund sufficient to produce it as should make any difference in the rule of construction to be applied.

In re Tootal's Estate, 2 Ch. Div., 628, the testatrix gave several life annuities, and directed the trustees to "set apart in their names sufficient funds to answer the said respective annuities." She gave the residue of her estate, "including the funds set apart to answer the said annuities" (with one exception), "when and so soon as such annuities shall respectively cease," to her brother, his heirs, etc., absolutely. The estate was insufficient. The sum set apart to raise M. R. Tootal's annuity of £50 per annum was only £218. 3s. 2d. He died six years after the testatrix, with arrears unpaid on his annuity exceeding the amount set apart to secure it. The residuary legatee claimed the principal fund as residuary, and M. R. Tootal's personal representative claimed that it should be applied to pay the unpaid arrears of the annuity. Vice Chancellor Bacon held the residuary legatee was entitled to the fund, as it was a specific gift of the fund set apart to answer the annuity, saying that "a gift is not less specific because it is mixed up in the residue." On appeal, his judgment was reversed, and it was held that the principal must be applied to pay the arrears. It will be observed that in the opinion of James,

L. J., no distinction in principle is recognized between a
claim for arrears of an annuity and a claim of a general
legatee, as against a residuary legatee, though a difference
in priority may exist between the claim for arrears and
the general legacy. Said the court: "A pecuniary legatee
or an annuitant must be paid in preference to the residuary
legatee, who can take nothing till all the legatees and an-
nuitants have been paid in full. It is true that a gift may
be so worded as to make the annuitant tenant for life of a
fund, the corpus being given over on his decease; but it is
impossible to put such a construction on a gift of the resi-
due, 'including the fund set apart to answer the annuity.'
To say that what is included in the residue is something
else than residue is contradicting the plain terms of the
will. The residuary legatee is entitled to nothing till the
annuitants have been paid in full." In the opinion of Mel-
lish, L. J., it was said: "The only question is whether, on
the death of the annuitant, the funds set apart for securing
their annuities fall into the residue, or are given to the
residuary legatee as pecuniary legacies. The testatrix says
plainly that they are included in the residue." In prin-
ciple this case seems plainly to support appellees' conten-
tion. In Arnold v. Arnold, 2 Mylne & K., 365, testator
provided that three legatees should each enjoy during life
the interest of £800, the principal to devolve eventually
to his residuary legatees; by another clause, the whole of
his remaining property to be divided into three equal
parts, to three named persons. The estate was insuffi-
cient, the £800 life estates were proportionately abated,
one of the life tenants died, and it was held that the sur-
viving annuitants were entitled to have the deficiencies
in their annuities satisfied out of the released fund, and

that, subject thereto, that fund fell into the residue. The court said: "The words used by the testator in the disposition of the capital sums, viz., 'the principal to devolve eventually to my residuary legatees,' are not expressions likely to be used by any one who meant to give a legacy to any particular person. The word 'devolve' especially is an apt expression, if he meant that the capital should fall into the residue; but it is a term not properly applicable to a gift to particular legatees. . . . The inference is, therefore, that he intended this sum of £800 to become part of his residuary estate, and that the same persons, whoever they might be, who took the residue, should take this sum as part of his general estate."

After a careful consideration of all the authorities, we are satisfied that the proper construction of the language used in the will under consideration is that the trust funds were to become a part of the residuary, and to go under the twenty-sixth clause of the will to the three legatees therein named, and under that clause those legatees can take nothing until the general pecuniary legacies are first paid in full. This we think undoubtedly the general rule, and there is no such manifest contrary intention expressed by the testatrix as to prevent its application.

The judgment is affirmed.

Whole court sitting.