NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 13

No. 2015-014

| | |
|---|---|
| In re Appeal of the Estate of Elaine A. Holbrook Late of Salisbury, Vermont (David Holbrook, Cheryl Holbrook and Charles Holbrook III, Appellants) | Supreme Court

On Appeal from

Superior Court, Addison Unit, Civil Division

May Term, 2015 |

Robert A. Mello, J.

Peter F. Langrock and Katherine B. Kramer of Langrock Sperry & Wool, LLP, Middlebury, for
  Appellants.

Kathleen M. Boe and James F. Carroll of English, Carroll & Boe, P.C., Middlebury, for
  Appellee.


PRESENT:    Reiber, C.J., Dooley, Skoglund and Eaton, JJ., and Morris, Supr. J. (Ret.),
            Specially Assigned


¶ 1.    **EATON, J.**    This appeal stems from a disagreement among siblings regarding the allowance, validity, and interpretation of the will of their mother, Elaine A. Holbrook (testator).  David and Cheryl Holbrook, two of testator's six children and co-executors of her estate, joined by Charles Holbrook III (grandson), one of testator's seven grandchildren (collectively, appellants), appeal two decisions of the Addison Superior Court, Civil Division, in favor of appellee Amy Holbrook, testator's daughter.  On appellee's motion, the civil division

dismissed appellants' claims that the probate division both improperly allowed the will and concluded that the will is not conditional.[1] The civil division then granted summary judgment in favor of appellee on appellants' remaining claim that the will was unambiguous in creating a thirteen-part devise, rather than a six-part devise. We affirm the civil division's conclusions that the will was properly allowed and that it is unambiguous, but reverse and remand on the issue of whether the will can be considered conditional.

¶ 2.    The relevant facts are as follows. Testator died on February 3, 2013. She was survived by six children, including appellant-executors, appellee, and seven grandchildren, including appellant-grandson.[2] Testator did not have a surviving spouse.

¶ 3.    On January 22, 2003, testator signed a three-page handwritten document entitled "My Last Will & Testament."[3] The will is in the form of a letter and is addressed "To all my children." The first sentence of the document—and the main source of contention between testator's children—reads as follows: "In the event that I don't make it through surgery on Thurs the 23rd of Jan. '03, I wish to bequeath you all of the property & personal belongings divided equally to the six of you & to the seven grandchildren." Testator did, in fact, survive the surgery in January of 2003 and lived for ten more years before her death in 2013.

---

[1] A conditional or contingent will is simply "a will that will take effect only upon the happening of a specified contingency." In re Estate of Perez, 155 S.W.3d 599, 601 (Tex. Ct. App. 2004); see also Restatement (Third) of Property: Wills & Donative Transfers § 3.1 cmt. s ("A will may be made conditional by clear language indicating that the will is to take effect only if some particular event happens.").

[2] In January 2003, when testator executed her will, she had seven grandchildren. In 2005, testator's eighth grandchild, Elliot, was born. In 2009, Raymond, one of testator's grandchildren extant at the time of the execution of the will, died. Testator therefore had seven grandchildren both at the time her will was executed and at the time of her death, albeit not the same seven grandchildren.

[3] Although appellants have not conceded that this document is in fact testator's will, for purposes of this opinion, we will refer to it as such.

¶ 4.    The will named two of testator's children as co-executors of her estate: appellant-executors David and Cheryl.  On February 13, 2013, ten days after testator's death, appellant-executors submitted to the Addison Superior Court, Probate Division the will, together with a petition to open testator's estate, which they estimated to include real estate valued at $125,000 and personal property valued at $25,000, for a total estate value of $150,000.  All six of testator's children consented to the allowance of the will, the petition to open the estate, and the appointment of appellant-executors as executors of the estate.

¶ 5.    Also on February 13, 2013, appellant-executors filed a probate form indicating all "interested persons," which listed all six of testator's children and all seven of her grandchildren, including appellant-grandson, Raymond, who had pre-deceased testator, and Elliot, who was born after the will was executed.

¶ 6.    On February 26, 2013, the probate division, based on the consent of the heirs at law and without a hearing, issued an order allowing the will.  That same day, the probate division sent a notice to all those listed as "interested persons," notifying them that the proposed will was allowed and that appellant-executors had formally been appointed by the court as co-executors of the estate.  No timely appeal of the order of allowance was filed.

¶ 7.    On March 16, 2013, appellant-executors began to inventory testator's estate and discovered $319,914 in cash hidden in testator's house.  None of this money had been reflected in the original petition and was apparently unknown to any of testator's children.  On March 21, 2013, appellant-executors filed the inventory list with the probate division, reflecting that the value of the estate had increased from $150,000 to $509,412.88.

¶ 8.    On April 16, 2013, appellee filed a motion in the probate division seeking clarification of the will.  Several days later, appellant-executors filed a request for a hearing to

3

determine whether the document that the probate division allowed as testator's will was in fact testator's last will and testament, claiming that the so-called will did not comply with the execution requirements of Vermont law. On July 31, 2013, before the court had scheduled a hearing, appellant-executors filed a second motion, this one challenging the allowance of the will on the grounds that (1) the probate division had not complied with the hearing requirements by failing to notify the grandchildren prior to allowance; (2) the will was ambiguous; and (3) the will was an ineffective conditional will.

¶ 9. On August 29, 2013, the probate division denied the motion to challenge the allowance of the will as to the first and third grounds, deferring the construction issue until a ruling on appellee's motion for clarification. The probate division concluded that appellant-executors lacked standing to raise the issue of notice and that their challenge to the validity of the will was untimely.

¶ 10. On September 18, 2013, appellant-grandson filed his own motion challenging the allowance of the will, making precisely the same improper-notice argument as appellant-executors made in their July 31, 2013 motion.

¶ 11. On December 12, 2013, the probate division issued a decision, ruling that (1) the will was properly allowed despite the lack of notice to testator's grandchildren; (2) the will was not ambiguous and created a thirteen-part devise of equal shares to the six children and seven grandchildren; and (3) the will was not conditional. Appellants timely appealed this decision to the superior court, and appellee moved to dismiss the appeal for lack of subject matter jurisdiction. On May 16, 2014, the civil division granted appellee's motion to dismiss in part, concluding that it did not have subject matter jurisdiction over the issue of improper notice or whether the will was conditional. The civil division reasoned that appellants had failed to make

4

a timely objection challenging either issue and that the issue of whether the will was conditional represented a collateral attack on the probate division's final order. The civil division did not dismiss appellants' claim that the will was ambiguous, however, concluding that it had jurisdiction to consider the probate division's construction of the will. Thereafter, appellee moved for summary judgment on the issue of ambiguity. On November 7, 2014, the civil division granted summary judgment in appellee's favor, concluding that there was no dispute as to any material fact and that appellee was entitled to judgment as a matter of law because the will unambiguously created a thirteen-part devise.

¶ 12. This appeal followed, with appellants raising two claims of error. First, appellants argue that the civil division erred in finding that it did not have subject-matter jurisdiction over grandson's September 2013 motion or appellant-executors' July 13 motion because both motions were untimely. Second, appellants argue that the court erred in entering summary judgment for appellee on the construction of the will because the will is ambiguous and the court should have considered extrinsic evidence on the intention of the testator.

I. Challenges to Allowance of the Will

¶ 13. We first address appellants' arguments that the civil division erred in finding it lacked subject-matter jurisdiction over the issues raised in the appeals from the probate division's decisions on their motions challenging allowance of the will relative to notice and whether the will is conditional. Appellants raise two arguments: (1) that the civil division erred in concluding that grandson's appeal was of the probate division's February 2013 order allowing the will, when in fact he was appealing the probate division's December 2013 decision denying his September 2013 motion challenging the allowance; and (2) that whether a will is conditional is not a question of allowance, but of construction, and that their appeal was neither a collateral

5

attack nor untimely. We affirm the civil division's conclusion that it did not have subject-matter jurisdiction over grandson's improper notice argument, but reverse and remand on the question of whether the will is conditional.

¶ 14. We review "dismissal for lack of subject matter jurisdiction de novo with all uncontroverted factual allegations of the complaint accepted as true and construed in the light most favorable to the nonmoving party." Town of Bridgewater v. Vt. Dep't of Taxes, 173 Vt. 509, 510, 787 A.2d 1234, 1236 (2001) (mem.) (quotation omitted); see V.R.C.P. 12(b)(1).

¶ 15. Proper resolution of each argument requires an initial discussion of what it means to allow a will to probate and the concomitant consequences stemming therefrom. Under Vermont law, "[a] will shall not pass either real or personal estate unless it is proved and allowed." 14 V.S.A. § 101. "In this state the probate of a will is a proceeding in rem, being in form and substance upon the will itself to determine its validity. The judgment determines the status of the instrument, whether it is or is not the will of the testator." Everett v. Wing, 103 Vt. 488, 492, 156 A. 393, 395 (1931); see Vt. Baptist State Convention v. Ladd's Estate, 59 Vt. 5, 6, 9 A. 1, 2 (1887) (setting forth that probate of will establishes capacity of testator); see also 14 V.S.A. § 102 ("The allowance of a will of real or personal estate shall be conclusive as to its due execution."). Accordingly, an order of the probate division allowing a will addresses only a very specific set of issues related to whether the instrument is or is not the will of the testator and whether it is otherwise valid.[4] See Everett, 103 Vt. at 492, 156 A. at 395 (describing probate of will as determining validity and status of instrument, whether or not it is will of testator); Woodruff v. Taylor, 20 Vt. 65 (1847) ("The probate of a will . . . determines the status of the subject matter of the proceeding. The judgment is upon the thing itself.") (emphasis in original);

---

[4] For example, did the testator have the requisite mental capacity; was the execution free from undue influence, fraud, or duress; and was the will properly witnessed.

6

see also 14 V.S.A. § 5 (stating that a will is not valid unless in writing, signed by testator, and witnessed). Such an order is conclusive as to the will's "due execution" and constitutes an appealable final order as to matters covered by the order. See 14 V.S.A. § 102; In re Estate of Perry, 2012 VT 9, ¶ 9, 191 Vt. 589, 39 A.3d 1060 (mem.) ("Because an order allowing a will is a final, appealable order, any later petitions to allow a codicil are impermissible collateral attacks."). The allowance of a will does not prevent a subsequent challenge to issues regarding the proper interpretation or construction of the instrument itself.

## A. Notice Requirement

¶ 16. As to their challenge to notice, appellants contend that the civil division erroneously considered appellant-grandson's September 2013 motion to be an appeal or collateral attack on the probate division's February 2013 order allowing the will, when, in fact, it was an appeal of the probate division's December 2013 denial of his motion. For this reason, appellants argue that his appeal was timely and the civil division had subject matter jurisdiction to consider whether notice was required to testator's grandchildren. We disagree with this reasoning. The probate division issued its order admitting testator's will on February 26, 2013. As an interested person, appellant-grandson received notice of that order. Any challenge to the validity of the probate division's order allowing the will, including appellant-grandson's September 2013 motion, was required to be made within thirty days thereof. See Ransom v. Bebernitz, 172 Vt. 423, 428, 782 A.2d 1155, 1159 (2001) (finding unappealed decree of probate division conclusive as to all matters covered by the decree); see also V.R.A.P. 4 (notice of appeal must be made within thirty days.). It is undisputed that no such timely filing was made, as appellant-grandson did not file his challenge to the allowance of the will until September 17, 2013, several months past the thirty-day timeframe.

7

¶ 17. Neither the probate division's decision to address the merits of appellant-grandson's September 2013 motion in its December 2013 written decision, nor appellants' timely appeal of that decision, re-opens the matter. Appellant-grandson received notice of the probate division's order allowing the will, and although he had the opportunity to appeal that decision within 30 days, he did not do so until September 17, 2013. That filing challenges the validity of the February 26, 2013 order and constitutes an impermissible collateral attack. See In re Estate of Perry, 2012 VT 9, ¶ 9. The civil division was therefore correct in concluding that it did not have subject matter jurisdiction to review appellant-grandson's claim of improper notice.

¶ 18. Although we affirm the civil division's dismissal of the notice argument, we take the opportunity to address its substance—that is, whether the probate division's failure to notify all "interested persons" prior to allowing the will was in error. Cf. OCS/Glenn Pappas v. O'Brien, 2013 VT 11, ¶ 41, 193 Vt. 340, 67 A.3d 916 (reviewing argument on merits even though argument was precluded as impermissible collateral attack).

¶ 19. "When a will is delivered to a probate division of the superior court accompanied by a petition to commence a probate proceeding, the court shall schedule a hearing and notice shall be given [under the Rules of Probate Procedure]." 14 V.S.A. § 107(a); see also V.R.P.P 3(a), (b) (explaining that generally probate proceeding begins with filing of petition to open decedent's estate). Under Rule 17(a), "[a]t the commencement of a probate proceeding all interested persons shall be considered parties and shall be served with notice." V.R.P.P. 17(a). At this stage, "interested person" includes, in relevant part, heirs, devisees, legatees, children, and spouses. V.R.P.P. 17(a)(1). The parties to this appeal, as heirs, devisees, legatees, and children, meet this broad definition. Under 14 V.S.A. § 107(a), the probate division should have scheduled a hearing on the allowance of the will.

8

¶ 20.   The receipt by the probate division of written consent to the allowance of the will by the heirs at law and next of kin dispensed with the need for testimony on the allowance of the will.  14 V.S.A. § 108.  The receipt of those consents did not mean, however, that the hearing required by 14 V.S.A. § 107(a) was no longer necessary.  While testimony to allow the will was no longer required, a hearing would have afforded those entitled to notice, which in this case included legatee appellant-grandson, the opportunity to attend the hearing and object to the allowance of the will.

¶ 21.   Here, however, the failure of the probate division to hold the allowance hearing and to notify appellant-grandson of it is of no consequence.  Appellant-grandson did receive notice of the allowance of the will and did not file any challenge to that allowance for many months thereafter.  No other person who was entitled to notice, but who did not receive it until after allowance, ever challenged the allowance of the will.  While appellant-grandson should have received notice sooner than he did, his belated attempt to challenge the allowance many months after receiving notice is untimely.

B.  Conditional Will

¶ 22.   As to their challenge to the validity of the will as conditional, appellants contend that the civil division erred in finding their challenge to be an impermissible collateral attack on the probate division's February 2013 order allowing the will because the effect of declaring the will to be conditional would be to disallow it, if the condition were not met.  Appellants contend that their argument relates to construction, not allowance, and therefore the court erred in concluding it was without jurisdiction.  We agree and therefore reverse and remand the superior court decision that it could not reach this issue.

9

¶ 23.　The issue of what precisely constitutes a conditional or contingent will, and how and when the issue should be raised, appears to be a matter of first impression in Vermont.[5] There is a uniform consensus among states, however, that the concept of a will being conditioned on the happening of an event is permissible.　See, e.g., In re Taylor's Estate, 259 P.2d 1014, 1017 (1953) (stating that California statutorily authorizes conditional wills); Damon v. Damon, 90 Mass. 192, 194 (1864) ("There seems to be no reason upon principle why an instrument cannot be made which is to take effect as a will only on the happening of a contingency named in it."); McMerriman v. Schiel, 140 N.E. 600, 601 (Ohio 1932) ("Conditional and contingent wills are fully recognized in the American and English cases."); In re Estate of Crowell, 154 S.W.3d 556, 560 (Tenn. Ct. App. 2004) (recognizing validity of conditional wills) (citing In re Estate of Franklin, E2000-02687-COA-R3-CV, 2001 WL 896635 (Tenn. Ct. App. Aug. 9, 2001)); Bagnall v. Bagnall, 225 S.W.2d 401, 402 (Tex. 1949) (stating that conditional wills have been recognized by Texas courts).　The parties present no argument to the contrary, and we can discern no principled reason why conditional wills would not be permissible in Vermont. Therefore, we hold that in Vermont, a will may be made contingent on the happening of a condition named therein so that the failure of the condition to occur means there is no will.

¶ 24.　Although the parties agree to the propriety of conditional wills as instruments, they dispute when a court should determine whether a will is conditional.　Appellants argue the matter should be determined following allowance to probate, while appellee contends that because a will made conditional on an event that never occurs is "inoperative and void," the matter is properly considered at the allowance stage.

---

[5]　Although the cases discussing this concept use "conditional will" and "contingent will" interchangeably and without distinction, for ease of reference, we exclusively use the term "conditional will."

¶ 25.    To determine whether the conditional language is a statement of the motive or inducement for making the will, or whether the testator clearly intended the instrument to be contingent on a condition precedent to the operation of the will, the court must undertake construction of the testator's intent.  See In re Houghton's Estate, 118 Vt. 228, 232, 105 A.2d 257, 259 (1954) (stating objective of construction "is to ascertain the intention of the testator"). The probate of a will, however, is a limited proceeding in "form and substance upon the will itself to determine its validity" and "the status of the instrument, whether it is or is not the will of the testator."  Everett, 103 Vt. at 492, 156 A. at 395; see also Eaton v. Brown, 193 U.S. 411, 413 (1904) ("[L]ogically the only question upon the probate was the factum of the instrument"); Estate of Perry, 2012 VT 9, ¶ 9 (finding an order of the probate division an appealable final order as to the will's validity).  The purpose of this limitation is obvious: if the document is not in fact the last will and testament of the decedent, there is nothing to probate, and if the document has been tainted by an improper influence, it is ineffective for that purpose.

¶ 26.    The point at which an interested party must raise the matter of whether an instrument is subject to a condition that was not fulfilled is controlled by 14 V.S.A. § 102, which provides that "[t]he allowance of a will of real or personal estate shall be conclusive as to its due execution."  Discussing this statute in In re Peck's Estate, 80 Vt. 469, 481, 68 A. 433, 435-36 (1908), this Court found that the language controls what can be raised at the allowance stage, impliedly limiting challenges to those of "due execution."  Due execution, in turn, requires conformity with the statutory formalities in 14 V.S.A. § 5, including that the will be "in writing and signed by the testator . . . and attested and subscribed by two or more credible witnesses in the presence of the testator and of each other."  Thus, the issues before the probate division at the allowance stage are very narrow.  Whether or not a will is conditional and whether the condition

11

is fulfilled are entirely separate matters from whether the will was duly executed. See Peck, 80 Vt. at 481, 68 A. at 436 ("[A]ny question whether [the surviving spouse] shall take under the will . . . is involved in the decree of distribution, and should be determined in connection therewith," rather than at the allowance stage). Because a determination of whether a will is conditional necessarily involves construction of the will, under the terms of § 102, that determination must be made subsequent to its allowance. Accordingly, appellants' challenge to the conditional nature of the will following allowance was timely and does not constitute a collateral attack on the allowance of the will.

## II. Ambiguity of Devise

¶ 27. Appellant-executors also argue that the civil division erred by granting appellee's motion for summary judgment on their claim that the will is ambiguous in its devise of property. The testamentary phrase disputed by the parties concerning the intended devise is: "I wish to bequeath you all of the property & personal belongings divided equally to the six of you & to the seven grandchildren." The civil division agreed with appellee and the probate division that the language unambiguously creates an equal thirteen-part devise between the children and grandchildren and that extrinsic evidence to determine testator's intent was therefore inadmissible. We agree with the civil division and affirm its determination that the testator intended a thirteen-part devise.

¶ 28. We review summary judgment decisions de novo using the same standard as the trial court. See Wentworth v. Fletcher Allen Health Care, 171 Vt. 614, 616, 765 A.2d 456, 459 (2000) (mem.). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a).

12

¶ 29.    As stated above, the primary objective in construing a will is to ascertain the intention of the testator.  See In re Mattison's Estate, 122 Vt. 486, 488, 177 A.2d 230, 231 (1962).  To determine such intention, "the court is to take the instrument by its four corners, consider it in all its parts, and give effect to its language read in the light of the relation of the parties concerned and the circumstances attending its execution."  Id.; see also In re Robinson's Will, 101 Vt. 464, 467, 144 A. 457, 458 (1929) ("Where the terms of a writing . . . are plain and unambiguous, there is no room for construction and it is to be given effect according to its own language."); Estate of Wilson, 2003 ME 92, ¶ 11, 828 A.2d. 784 (stating that only when will is ambiguous may court resort to extrinsic evidence to discern the intention of testator).  If provisions of a will are ambiguous, a court may rely on the rules of statutory construction to interpret the meaning of the disputed terms and may consider extrinsic evidence in order to clarify the circumstances surrounding the making of the agreement.  Isbrandtsen v. N. Branch Corp., 150 Vt. 575, 578-79, 556 A.2d 81, 83-84 (1988).  Where the "testator's intention is clear, courts should not resort to canons of construction in an attempt to unravel what needs no unraveling."  Mattison's Estate, 122 Vt. at 488, 177 A.2d at 231 (citation omitted).

¶ 30.    Appellant-executors argue that the sentence in paragraph thirty-one is open to at least three interpretations, and that because of this ambiguity, the civil division erred by not considering extrinsic evidence of the testator's intent, i.e., that testator had intended for the property to be divided between only her six children.  Appellants contend that the relevant sentence can be interpreted as devising (1) six equal shares, one to each of testator's children; (2) seven equal shares, one for each of testator's children and one to be shared among her seven grandchildren; or (3) thirteen equal shares, one to each of testator's six children and seven grandchildren.  These suggestions, however, are an unreasonable interpretation of what amounts

to an unfortunately drafted sentence and unnecessarily invite speculation beyond the four corners of the document. See Isbrandtsen 150 Vt. at 577, 579-81, 556 A.2d at 83-84 (stating that "somewhat awkward" language does not in itself render a contract ambiguous); In re Lull's Estate, 120 Vt. 195, 199, 130 A.2d 615, 618 (1958) ("It is [the court's] duty to construe the will which the testatrix has made not to speculate on her intentions and make a will for her.").

¶ 31.    Appellants suggest that the application of the words "equally" and "seven" are subject to different interpretations; however, "the use of a term susceptible of two or more meanings does not necessarily make the meaning of the sentence in which it appears ambiguous or doubtful." In re Robinson's Will, 101 Vt. at 467, 144 A.2d at 457. When taken as a whole and in the context of the will in its entirety, testator's choice of words, "divided equally to the six of you & to the seven grandchildren," is not subject to different and reasonable interpretations. Although the seven grandchildren alive at the time testator executed her will are not the exact same persons as those alive when she died, it is well established that the testator's beneficiaries are determined at the testator's death. In re Valiquette's Estate, 122 Vt. 350, 365, 173 A.2d 839, 839 (1961); In re Carter's Will, 99 Vt. at 482, 134 A. at 583. Thus, at the time of her death, the testator had six children and seven grandchildren who were extant, and no ambiguity is seen to exist.

¶ 32.    Further, there are no synonyms for any of the words used by testator in the intended devise that would lead a reasonable person to interpret the sentence as other than devising thirteen shares. Nor is there other language in the will that contradicts a finding that it creates a thirteen-part devise or that indicates what other distribution to the grandchildren would be. See Isbrandtsen, 150 Vt. at 579, 556 A.2d at 84 (holding that if no ambiguity is found, then language must be given effect in accordance with its plain, ordinary, and popular sense); Cf. In

14

re Mattison's Estate, 122 Vt. at 488, 177 A.2d at 231 ("We look to the whole context of the will and consider its general spirit."); Tuttle v. Tuttle, 112 Vt. 271, 278, 23 A.2d 523, 526 (1952) ("If different provisions of the will apparently conflict, such construction is to be given to them as will give effect to all the provisions unless a clear repugnancy exists between the different provisions.").

¶ 33.    Appellants suggest that the court look to surrounding circumstances for context, but courts need only consider such circumstances when "inquiring into the existence of ambiguity." Isbrandtsen, 150 Vt. at 579, 566 A.2d at 84. The sentence, read in its ordinary sense, clearly devises thirteen shares: one to each of the six children and seven grandchildren. Because we conclude that there is no ambiguity in the language of the devise, we need not consider appellants' argument that the use of extrinsic evidence supports their position. The civil division correctly concluded that the will creates a thirteen-part devise and entered summary judgment without resorting to extrinsic evidence.

We affirm the civil division's conclusions that the will was properly allowed and was not ambiguous as to its creation of a thirteen-part devise. We reverse and remand on the issue of whether the will was conditional.

FOR THE COURT:

_____
Associate Justice