NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 59

No. 2017-113

| | |
|---|---|
| Bonnie L. Avery | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orange Unit, |
| | Civil Division |
| | |
| Estate of Allen D. Avery | October Term, 2017 |

Timothy B. Tomasi, J.

W. E. Whittington of Whittington Law Associates, PLLC, Hanover, New Hampshire, for
  Appellant.

Mark A. Langan and Justin B. Barnard of Dinse, Knapp & McAndrew, P.C., Burlington, for
  Appellees Mark Avery and Jeffrey Avery.

Richard C. Carroll of Phillips, Dunn, Shriver & Carroll, P.C., Brattleboro, for Appellee John T.
  Schiffman, Executor of the Estate of Allen D. Avery.


PRESENT: Reiber, C.J., Skoglund and Robinson, JJ., and Bryan (Ret.) and Davenport (Ret.),
        Supr. JJ., Specially Assigned


¶ 1.    **REIBER, C.J.**    Allen Avery (testator) died testate in 2008 and left property to his spouse and children. Spouse, children, and the executor of the estate have disputed how the estate's administrative expenses should be allocated. The civil division determined that expenses should be paid out of spouse's share of the personal estate until paid in full or until they exhaust her share, and that children's share of the personalty should contribute to administrative expenses only if spouse's share of the personalty is insufficient. Spouse appeals. We affirm.

¶ 2.    Although the parties below contested several issues relating to testator's estate, resulting in a complicated procedural history, the only issue before this Court is who should pay the estate's administrative expenses.[1]  Testator executed a will in 1997 that bequeathed all his property to his wife.  Subsequently, testator executed a codicil that specifically bequeathed to his three children his shares in Avery Inns of Vermont, Inc.  The codicil otherwise made no changes to the will.

¶ 3.    Testator died in 2008.  The probate court issued a distribution decree in 2011. Pursuant to the specific devise in the codicil, children received testator's shares of Avery Inns of Vermont, Inc.  Spouse received the balance of the estate, which included a lakehouse, shares of Avery Family, LLC, a bank account, a car, and a boat.  Spouse appealed the probate court's decision to the civil division, and the parties partly resolved the matter with a stipulated judgment. The civil division remanded the balance of the case to the probate division, and spouse appealed the resulting judgment to the civil division.[2]  Spouse requested partial summary judgment, which the court denied in December 2014.  In January 2015, the court approved a "Joint Discovery and Scheduling Motion," whereby the parties agreed to have the court decide certain issues based on written submissions, rather than through a trial.  After a hearing, the court issued an order in July 2016 that partially addressed the issues raised by the parties and requested further briefing. Following additional briefing and a hearing, the court issued an opinion in February 2017, which also incorporated the provisions of the July 2016 order.  Spouse timely appeals the February 2017 decision.

---

[1]  The amount of the administrative expenses is contested in other litigation.  All agree the cost is considerable.

[2]  Spouse brought two separate appeals during this second phase of appeal, but only one of those appeals concerns us here.  Additionally, spouse brought a civil suit against the attorneys and administrators of the estate.

¶ 4. At issue on appeal are: (1) whether the will prescribes an allocation method for administrative expenses; (2) whether the parties' previous agreements constituted a binding stipulation in favor of proportional allocation; and (3) whether the court erred in articulating the default rule of abatement. The civil division determined that (1) the will expressed a "preference" for abating personal assets before real estate assets but said nothing about how the expenses should be allocated among the shares of personalty; (2) the parties were not bound to proportional allocation; and (3) according to common-law principles, expenses must be paid out of the residuary and general devises first and specific devises second. The court also found that testator's devise to children was specific, and the devises to spouse were either general or residuary.

¶ 5. On review, the first two issues require us to construe the will's language and interpret the parties' agreements and prior court orders. These are conclusions of law that we review de novo. In re Estate of Harding, 2005 VT 24, ¶ 6, 178 Vt. 139, 878 A.2d 201 (stating that review of courts' conclusions of law in interpreting language of deed "is plenary and nondeferential"); Lazarus v. Sherman, 10 A.3d 456, 462 (R.I. 2011) ("When interpreting the language of a will, . . . we proceed on a de novo basis, just as we do when we interpret the language in contracts." (quotation omitted)). The third issue is also a question of law, which we review de novo. Smith v. Desautels, 2008 VT 17, ¶ 8, 183 Vt. 255, 953 A.2d 620 (reviewing questions of law de novo).

I. Will Construction

¶ 6. First, we address whether the will prescribes an allocation method for administrative expenses. In construing a will, our objective is to discern the intent of the testator. In re Estate of Holbrook, 2016 VT 13, ¶ 29, 201 Vt. 254, 140 A.3d 788. The court relies first on "the language used, since, so far as it may be legally carried out, that governs." In re Estate of Barslow, 128 Vt. 192, 196, 260 A.2d 374, 377 (1969). If the will's language is ambiguous, the court may rely on extrinsic evidence to discern the testator's intent. Estate of Holbrook, 2016 VT

3

13, ¶ 29. In this case, the parties stipulated to the absence of any relevant extrinsic evidence, so we consider only the language of the will in discerning testator's intent.

¶ 7. The will addresses administrative expenses in Article First, which states:

> I desire that all my legally enforceable debts and the charges of my funeral and of administration upon my estate be paid . . . out of my personal estate, in the manner provided for by law, as soon as may be practicable after my decease.

By its plain terms, Article First expresses an intention that administrative expenses be paid out of testator's "personal estate," meaning his personalty, rather than his real estate. As the trial court noted, this preference for abating personalty before real estate is supported by a long-standing distinction between personal estate and real estate in our law. See, e.g., In re Callahan's Estate, 115 Vt. 128, 134, 52 A.2d 880, 883 (1947) (stating as established law that real estate passes immediately to heirs and devisees and is used to pay administrative expenses only if personal property is insufficient). We can discern no further expression of testator's intent regarding allocation. Article First is silent regarding which personalty, or whose personalty, should pay the administrative expenses.

¶ 8. Spouse counters that if we read Article First as silent regarding allocation among personalty, we effectively interpret "paid" as "pay provisionally, to be reallocated later," which is "strained" and "unsupported" and makes the clause "surplusage." She also argues that if Article First is silent regarding allocation among personalty, testator "left a huge gap in his estate plan," which is "inconceivable." We reject spouse's arguments. Our construction does not transform "paid" to "pay provisionally, to be reallocated later." Nor is it "inconceivable" that testator left something undone in his estate plan. See Louisville Presbyterian Theological Seminary v. Fid. Tr. & Safety Vault Co., 68 S.W. 427, 429 (Ky. 1902) (observing "testator rarely contemplates the possibility" his estate will be insufficient to pay estate's expenses). Article First unambiguously states a preference for paying administrative expenses out of personalty. But it states nothing

4

more. It does not indicate any way in which the expenses should or should not be allocated among the assets of personalty.

## II. Stipulation

¶ 9. Second, we address whether the parties are bound to proportional allocation due to their prior agreements. We note at the outset that spouse phrased her argument differently in the civil division than she does on appeal to this Court.[3] In the civil division, she contended that the parties were "collaterally estopped by their previous positions" from arguing against proportional allocation and that the court's December 2014 order decided the issue when it observed that the parties "nominally agree to pro rata apportionment." In response, the court's July 2016 order interpreted spouse's argument as based on judicial estoppel, rather than collateral estoppel, and held that because the December 2014 order "did not formally adopt" the proportional allocation method, judicial estoppel did not apply. On appeal, spouse does not mention estoppel; instead, she argues the parties "stipulated" to proportional allocation in the January 2015 "Joint Discovery and Scheduling Motion," which the court adopted.

¶ 10. Whether spouse bases her argument on estoppel or stipulation, the evidence does not support her position. If she is relying on judicial estoppel or collateral estoppel, the record must show that the court adopted proportional allocation. See In re Chittenden Solid Waste Dist., 2007 VT 28, ¶ 29, 182 Vt. 38, 928 A.2d 1183 (stating judicial estoppel applies only when "prior position" was "adopted in some manner" (quotation omitted)); Gallipo v. City of Rutland, 173 Vt. 223, 236, 789 A.2d 942, 952 (2001) (stating that collateral estoppel applies when precluded issue

---

[3] Generally, we do not address issues that have not been raised below. Lanphere v. Beede, 141 Vt. 126, 129, 446 A.2d 340, 341 (1982). "However, where a litigant's argument is clear enough for the trial court to evaluate it and for an opponent to respond to it, the claim is adequately preserved for appeal." State v. Mumley, 2009 VT 48, ¶ 18, 186 Vt. 52, 978 A.2d 6; see also EBWS, LLC v. Britly Corp., 2007 VT 37, ¶ 12, 181 Vt. 513, 928 A.2d 497 (concluding claim preserved for appeal even though "objections were not phrased with exactly the same terminology [used] on appeal"). We conclude spouse's change in presenting her argument does not prevent us from considering it on appeal.

5

"was resolved by a final judgment on the merits" (quotation omitted)). If she is relying on a stipulation, the record must show there was a specific agreement to proportional allocation. See Palmer v. City of Long Beach, 199 P.2d 952, 957 (Cal. 1948) (in bank) (stating stipulation is binding only when parties agree to terms); Gitler v. Russian Co., 108 N.Y.S. 793, 795 (App. Div. 1908) (stating court must enforce stipulation only if "it is clear in its terms and leaves no doubt of the intention of the party so stipulating").

¶ 11.    Although we agree with spouse that the parties did seem to share an assumption that children and spouse would share administrative expenses in some way, we can find no evidence that the parties affirmatively agreed to, or the court ever adopted, a proportional method of allocation. The parties' April 2012 "Settlement Agreement and Stipulation," which the court adopted, expressly states, "There is no agreement at this time concerning the apportionment among the parties . . . of responsibility for the administrative expenses . . . ." In December 2014, the superior court observed that the parties "nominally agree to pro rata apportionment of expenses," which by its term is an observation that the parties' agreement was "nominal," not conclusive or binding. See Nominal, Merriam-Webster Online Dictionary, Merriam-Webster.com [https://perma.cc/DF58-UWPS] (defining "nominal" as "existing or being something in name or form only"). The joint discovery and scheduling motion adopted in January 2015 stipulates that the parties will submit to the court disagreements about the allocation of mortgage, utilities, and other expenses. There is no statement agreeing to or adopting proportional allocation. Moreover, the parties' briefing throughout the litigation shows sharp disagreements about allocation. We conclude the parties did not agree to proportional allocation. We recognize spouse's frustration in expecting the parties would share expenses in some way, only to have that expectation overturned. But without a clear stipulation on the subject or a prior court order, we cannot conclude the court erred in declining to conform to that expectation.

### III. Rule of Abatement

¶ 12.   Lastly, we address the common-law rule of abatement.   In general, where the testator's intent is not expressed, the court infers the testator's probable intent according to statute and common law.   See In re Estate of McCoy, 126 Vt. 28, 30, 220 A.2d 469, 471 (1966) (stating court may "[r]esort to presumed intentions" when testator's intention is unclear); Louisville Presbyterian Theological Seminary, 68 S.W. at 429 (explaining that "general rules . . . are intended to express and enforce the probable intention of the average testator" when will does not express intent).   Here, we cannot determine testator's intent from his will, and there was no relevant statute in effect.[4]   Thus, we turn to the common law.

¶ 13.   Because we have found no Vermont case law addressing this issue, we look to the Restatement (Third) of Property (Restatement) and other states' case law for an expression of the common-law rule of abatement.   Restatement (Third) of Prop.: Wills & Donative Transfers § 1.1 (1999) [hereinafter Restatement]; cf. Berge v. State, 2006 VT 116, ¶ 18, 181 Vt. 1, 915 A.2d 189 (quoting Restatement (Third) of Property to articulate common-law rule of servitudes); Doe v. Forrest, 2004 VT 37, ¶ 21, 176 Vt. 476, 853 A.2d 48 (stating that this Court has "routinely adopted provisions of the Restatement (Second) of Agency as reflecting the common law of Vermont"); State v. Sprague, 2003 VT 20, ¶ 42, 175 Vt. 123, 824 A.2d 539 (relying on case law of other states to articulate common-law rule regarding police authority); M. Ward & Co. v. Morrison, 25 Vt.

---

[4] In 2009, the Legislature enacted a statute that would resolve allocation of administrative expenses in this case.   14 V.S.A. § 338.   But it was not effective until 2009, following testator's death in 2008, and therefore does not control.   See 2009, No. 55, § 14 (stating that abatement provision was effective only for persons dying on or after June 1, 2009); Estate of Barslow, 128 Vt. at 195, 260 A.2d at 376 ("A will ordinarily speaks as of the time of the testator's death.").

Spouse argues the civil division impermissibly relied on 14 V.S.A. § 338.   We disagree. The court would have erred had it based its decision on the statute, but it merely cited the statute as further evidence that the rule of abatement it applied is widely accepted as common law.   Not only was this not improper, we agree with the civil division that § 338 supports the court's conclusion regarding Vermont's common-law rule of abatement.

593, 601 (1853) ("The presumption is, that upon a common law question, the common law of a sister State is the same as our own . . . .").

¶ 14. According to the Restatement, "[u]nless otherwise provided by will or applicable statute, shares of heirs and devisees abate in the following order to pay claims: (1) intestate shares; (2) residuary devises; (3) general devises; (4) specific devises." Restatement, supra, § 1.1 cmt. f. The Restatement thus sets out a method to allocate an estate's administrative expenses according to the type of gift devised. It further explains that a specific devise is a "testamentary disposition of a specifically identified asset"; a general devise is a "testamentary disposition, usually of a specified amount of money or quantity of property, that is payable from the general assets of the estate"; and a residuary devise is the "net probate estate not disposed of" by other devises. Id. This order of abatement is based on § 3-902 of the Uniform Probate Code (UPC), "which codifies the usual rules of abatement followed generally." Restatement, supra, § 1.1 reporter's note 3. The UPC states: "[S]hares of distributees abate . . . in the following order: (i) property not disposed of by will; (ii) residuary devises; (iii) general devises; (iv) specific devises . . . ." U.L.A. Uniform Probate Code § 3-902(a) (2010). No one disputes that here the devise to children was a specific devise, and spouse's devises were either general or residuary.

¶ 15. The case law of other states yields the same common-law rule of abatement. The Supreme Court of Alabama stated in 1961—more than twenty years before Alabama's legislature adopted an abatement rule that follows the same order as UPC § 3-902—that "it is the general rule that where the assets are insufficient to pay all the debts of the estate and the legacies, the loss falls first, on the residuary, second, on the general legacies, and third, in the specific devises or legacies." Ullmann v. First Nat'l Bank of Mobile, 137 So. 2d 765, 768 (Ala. 1961); see Ala. Code § 43-8-76 (adopting abatement rule in 1982 that follows same order as UPC § 3-902). Moreover, this rule is in place specifically for the kind of situation we have here, where the testator provided no plan for abatement, probably because he thought none would be needed. Louisville

8

Presbyterian Theological Seminary, 68 S.W. at 429 (observing "testator rarely contemplates the possibility" his estate will be insufficient to pay estate's expenses and "courts must determine the intention of testator upon a subject upon which he never had any intention").

¶ 16.  A brief review of other states shows this abatement rule has been long accepted as common law.  See id. (following default rule that "residuary clauses abate first" and "[n]o payment can be made to residuary legatees until all other legacies have been paid in full"); Emery v. Bachelder, 3 A. 733, 734-35 (Me. 1886) (abating general devises before specific devises); Union Tr. Co. of Springfield v. Nelen, 186 N.E. 66, 68 (Mass. 1933) (same); Kemp v. Dandison, 135 N.W. 270, 271 (Mich. 1912) (referring to abatement of residuary, then general devises, then specific devises, as "general rule"); Wallace v. Wallace, 23 N.H. 149, 153 (1851) (abating specific legacies last); Sanborn v. Sanborn, 184 A. 400, 401-02 (N.J. Ch. 1936) (abating devises in same order as Restatement); Jenkins v. Hanahan, 15 S.C. Eq. (Chev. Eq.) 129, 135 (S.C. App. Eq. 1840) (stating general rule of abatement as "well known"); Darden v. Hatcher, 41 Tenn. (1 Cold.) 513, 516 (1860) (following general rule of abatement).

¶ 17.  Spouse argues the Restatement's rule reflects the law only of states that have adopted the UPC, and because Vermont has not adopted the UPC, it does not represent Vermont's common law.  Further, she claims that non-UPC states follow alternative methods of abatement that would favor spouse, and as a "non-UPC" state, our law also employs an alternative rule.  We disagree that the Restatement expresses the common law only of states that have adopted the UPC. As demonstrated by the cited cases, which predate the UPC, the Restatement articulates the "rules of abatement followed generally" for many decades.  Restatement, supra, § 1.1 reporter's note 3. Moreover, the various statutory rules of abatement adopted by non-UPC states shed no light on what Vermont's common law would be if it were not the general rule.  Some non-UPC statutes favor the spouse, some adopt proportional allocation, and some do something else.  See, e.g., Cal. Prob. Code § 21402 (abating devises in same general order as Restatement and UPC but giving

9

preference to relatives over nonrelatives within general devise type and specific devise type); Conn. Gen. Stat. Ann. § 45a-429 (adopting proportional abatement among devisees regardless of devise type); Iowa Code Ann. § 633.436 (abating in same general order as Restatement and UPC but giving preference to surviving spouse over all other devisees). Even if we assumed Vermont's law aligns with the non-UPC states, these statutes provide no clear alternative rule to follow.

¶ 18. Spouse also argues Vermont's statutory law generally favors surviving spouses, and therefore we should infer that abatement favoring the spouse is appropriate here. See, e.g., 14 V.S.A. § 311 (awarding surviving spouse all of decedent's estate if decedent dies intestate and with no descendants unshared by spouse). Vermont's case law—more pertinent to the question of common law—also shows a preference for the spouse. See, e.g., Phillips v. Northfield Tr. Co., 107 Vt. 243, 246, 179 A. 154, 155-56 (1935) ("A surviving spouse is a favorite of the law."). But we cannot assume, based on this general preference, that Vermont's common-law rule of abatement differs so significantly from the general rule. Further, we have nothing by which to determine what that preference would be. See, e.g, Iowa Code Ann. § 633.436 (giving preference to surviving spouse over all other devisees); Md. Code Ann. § 9-103 (giving preference to spouse within general devise type only). Given the strong support for the Restatement's general rule of abatement, and the negligible and indeterminate support for an alternative rule, we conclude the Restatement rule accurately articulates the common-law rule of abatement in Vermont before the enactment of 14 V.S.A. § 338.

¶ 19. Spouse claims that allocating the full burden of the administrative costs to her extinguishes her inheritance of personal property, contrary to testator's intent. Certainly, it will be unfortunate if spouse loses her inheritance of personal estate to administrative expenses. But we must "construe what [testator] said . . . in the light of the recognized rules of construction, and not by speculation as to what [he] would have intended had [he] foreseen the present situation." Louisville Presbyterian Theological Seminary, 68 S.W. at 429. The will clearly indicates that

administrative expenses be paid out of the personal estate, but it does not otherwise indicate how to allocate expenses within this class of assets.  Absent indication of testator's intent, we presume intent from the common law.

    <u>Affirmed</u>.

FOR THE COURT:

_____

Chief Justice
