NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 59

No. 2019-257

In re Estate of Patricia Bixby McHugo          Supreme Court
(Susan Inouye, Appellant)

                                                    On Appeal from
                                                    Superior Court, Windsor Unit,
                                                    Probate Division

                                                    October Term, 2019

Frederick M. Glover, J.

Kevin M. Henry of Primmer Piper Eggleston & Cramer PC, Burlington, for Appellant.

Andrew J. Kestner and Erin Miller Heins of Langrock Sperry & Wool, LLP, Burlington, for Appellees.

PRESENT: Reiber, C.J., Robinson and Eaton, JJ., and Dooley, J. (Ret.) and
                 Pearson, Supr. J. (Ret.), Specially Assigned

¶ 1.    **ROBINSON, J.**    Appellant challenges the probate division's allowance of her mother's most recent will. She argues that this will was executed in violation of a prior contract for mutual wills, and that it therefore should not have been allowed for probate administration. We conclude that the will was properly allowed, but that a contract for mutual wills may be enforced through a breach-of-contract claim. We therefore affirm the probate division's decision and remand for further proceedings consistent with this opinion.

¶ 2.    The probate division found the following facts. Testator was ninety-two years old and a resident of Windsor County when she died in 2016. Testator previously lived in Arizona and was married to John Walter McHugo. They had three children together before their divorce

in 1978. In 1997, testator and her ex-husband each executed a will in Arizona. The wills contained the following language: "This Will is executed in consideration of a mutual will simultaneously executed by [the other] and the parties have agreed not to revoke or alter these Wills except with the mutual consent of both." Each will provided for the establishment of a testamentary trust for the support of the other former spouse during their lifetime, and provides for the remaining assets to be divided equally among the three children after both former spouses have died.

¶ 3. In 2006, while living in Montpelier, Vermont, testator executed another will revoking the 1997 will. The 2006 will states in part: "I, [testator], a resident of Montpelier, County of Washington, State of Vermont, being of sound mind and memory, do hereby revoke my former Wills and Codicils and freely declare this to be my Last Will and Testament." The 2006 will divides most of testator's estate between two of her children, who are the appellees in this case. It excludes testator's ex-husband and third child, who is the appellant in this case. Testator's ex-husband predeceased her in 2010.

¶ 4. Following testator's death in 2016, this matter was commenced in the probate division. The court appointed a special administrator, who in September 2017 filed a motion to allow the 2006 will. Appellant filed an objection to the motion, stating that she had filed contractual claims relating to the will in both federal and state courts in Arizona. The federal-court claim was dismissed for lack of subject-matter jurisdiction, and the state-court proceedings were eventually stayed pending the outcome of this case. In April 2018, appellant filed a motion in this case to allow the 1997 will and disallow the 2006 will. Appellant argued that the 2006 will was invalid because testator had previously entered a valid and enforceable contract for mutual wills. Appellees argued that the 2006 will revoked the mutual wills under Vermont law and that appellant had no standing to enforce the contract.

¶ 5. The probate division issued an opinion that addressed "the limited issue of whether [testator's] execution of the 2006 Will revoked her 1997 Will," and concluded that it did. The

2

court reasoned that under Vermont law, a will may be revoked by executing a subsequent will that expressly revokes the previous will, and there is no exception for mutual wills. See 14 V.S.A. § 11. The court noted, "Whether there are consequences for revoking the 1997 Will is a different question and not one presently before the Court." It therefore granted the motion to allow the 2006 will and denied the motion to allow the 1997 will.

¶ 6.     On appeal,[1] appellant argues that the probate division should have applied Arizona law to address the question of whether the 1997 contract for mutual wills invalidates the 2006 will, or in the alternative whether it may be enforced through contract law. She further argues that the probate division had jurisdiction to address this issue. Appellees respond that the probate division properly allowed the 2006 will, and was not required to inquire beyond the existence of a validly executed Vermont will. Appellees also argue that contractual wills are contrary to public policy.[2] We review the probate division's conclusions of law without deference and factual findings for clear error. In re Estate of Kurrelmeyer, 2010 VT 20, ¶¶ 10-11, 187 Vt. 620, 992 A.2d 316 (mem.).

¶ 7.     We hold that the probate division properly addressed the limited question of whether to allow the 2006 will. Because the testator resided in Vermont at the time of her death, Vermont law applies to determine the validity of the will, and pursuant to 14 V.S.A. § 11, the will is valid. This is true regardless of whether testator made a promise not to revoke a previous will; where states have enforced mutual wills, they have typically done so through contract law. Recognizing contracts for mutual wills through breach-of-contract claims is consistent with our case law related to contracts for the disbursement of property after death. In this case, because no

---

[1] Appellant appealed directly to this Court pursuant to 12 V.S.A. § 2551 (providing that Supreme Court has jurisdiction over questions of law arising in probate matters).

[2] Appellees argued before the probate division that appellant lacks standing to enforce the contract for mutual will, but they have not advanced this argument on appeal, and we do not address it. See Lofts Essex, LLC v. Strategis Floor and Décor Inc., 2019 VT 82, ¶ 10 n.7, __ Vt. __, 224 A.3d 116 (stating that claims not raised on appeal are waived).

findings have been made regarding a contract in 1997 or a breach thereof, we remand to the probate division for further proceedings.

¶ 8.     The question of whether the 2006 will is valid is governed by Vermont law. In general, the validity of a bequest or disposition of personal property by will is governed by the law of the testator's domicile at the time of death. In re Dennis' Estate, 98 Vt. 424, 427, 129 A. 166, 168 (1925). The law of the domicile also applies to the question of whether the 2006 will validly revoked the prior will. See Restatement (Second) of Conflict of Laws § 263 cmt. i (1971); In re Alburn's Estate, 118 N.W.2d 919, 921 n.1 (Wis. 1963) (noting trial court correctly held that Wisconsin law applied to revocation issue where testator was domiciled in Wisconsin at time of death); see also In re Smith's Estate, 97 P.2d 677, 683 (Wyo. 1940) (noting "universally adopted" rule that with regard to personal property, courts apply law of domicile to question of revocation, and with regard to real property, courts apply law of state where real property is located).

¶ 9.     Under Vermont law, the 2006 will is valid and revokes all previous wills. As the probate division correctly explained, 14 V.S.A. § 11 provides generally that a will may be revoked by executing a subsequent will that revokes the previous will.[3] The 2006 will states, "I . . . hereby revoke my former Wills and Codicils." There is no exception to revocation where the testator has previously made a contract for mutual wills—nor is there, as appellant suggests, a legal rule that a will is invalid if it is made in breach of a contract for mutual wills. See 14 V.S.A. §§ 1, 5 (stating that any person of age who is of sound mind can make will, and setting out requisites for execution

---

[3] At the time the will was offered for admission, § 11 stated, in relevant part: "A will shall not be revoked, except by implication of law, otherwise than by some will, codicil or other writing, executed as provided in case of wills." See 2017, No. 195 (Adj. Sess.), §§ 1, 19 (amending language and providing that "act shall take effect on July 1, 2018 and shall apply to wills executed or offered for admission on or after that date"). The statute has since been amended to state that a will may be revoked "by executing a subsequent will that revokes the previous will expressly or by inconsistency." 14 V.S.A. § 11(a)(1)(A). We would reach the same conclusion in this case under the current version of the statute.

4

of will).  Moreover, a testament or will is "ambulatory and revocable" during the lifetime of the testator.  Blair v. Blair, 111 Vt. 53, 56, 10 A.2d 188, 189 (1940).

¶ 10.  Even assuming that testator executed an enforceable contract for mutual wills in 1997, this would have no impact on the allowance of the 2006 will.  "[A]n order of the probate division allowing a will addresses only a very specific set of issues related to whether the instrument is or is not the will of the testator and whether it is otherwise valid."  In re Estate of Holbrook, 2016 VT 13, ¶ 15 & n.4, 201 Vt. 254, 140 A.3d 788 (noting "otherwise valid" means, "[f]or example, did the testator have the requisite mental capacity; was the execution free from undue influence, fraud, or duress; and was the will properly witnessed").  The allowance of a will merely determines the status of the instrument as the will of the testator; it does not encompass substantive challenges relating to the interpretation of the will, or other claims against the estate. Id. ¶ 15.

¶ 11.  Our conclusion that the 1997 mutual will does not prevent the allowance of the 2006 will is consistent with case law from other states.  Courts generally enforce mutual wills through contract law.[4]  See, e.g., Garrett v. Read, 102 P.3d 436, 444 (Kan. 2004) ("A single instrument may be both a will contractual in nature, and a contract testamentary in character; as a will, it is revocable but as a contract it is enforceable . . . ." (quotation omitted)), disapproved of on other grounds by Nelson v. Nelson, 205 P.3d 715 (Kan. 2009); Shrimp v. Shrimp, 412 A.2d 1228, 1235 (Md. 1980) ("Although the will may be revoked at any time in a manner specified by law, the appellant may not avoid his contractual obligations by doing so." (quotation omitted)); In re Estate of Stuchlik, 857 N.W.2d 57, 67 (Neb. 2014) ("[E]ven where a valid contractual will

---

[4]  While some states refer to a contractual will as "irrevocable," they emphasize that it is the contractual element that is irrevocable.  See, e.g., In re Estate of Zivin, 2018 IL App (1st) 172883, ¶ 15, 129 N.E.3d 40; Keith v. Lulofs, 724 S.E.2d 695, 697-98 (Va. 2012); see also 1 Page on Wills § 10.3 (2020) ("While the courts talk about the will as irrevocable they probably mean that the contract to make the will is enforceable if the contract is not performed.").

existed, that existence did not make a will irrevocable."); In re Schultz' Estate, 193 N.W.2d 655, 657 (Wis. 1972) ("[I]t is the contract and not the will that is irrevocable." (quotation omitted)). For instance, in Shaka v. Shaka, the New Hampshire Supreme Court recognized that a person may contract to make a will, and affirmed the jury's verdict that there was such a contract, but did not disturb the admission to probate of a later will that was made in breach of the contract. 424 A.2d 802, 803 (N.H. 1980). In Arizona, where testator's 1997 will was executed, courts have recognized that " 'a joint, mutual or reciprocal will may be revoked as any other will may be,' " even if it is also accompanied by an "enforceable contractual obligation." Matter of Estate of Moore, 669 P.2d 609, 611 (Ariz. Ct. App. 1983) (quoting 1 Page on Wills § 11.9 (1967)).

¶ 12. Appellee urges us to hold that contracts for mutual wills are unenforceable in Vermont as a matter of public policy; we decline to do so. Vermont law has recognized and enforced contracts to make a devise. See Mueller v. Mueller, 2012 VT 59, ¶ 19, 192 Vt. 85, 54 A.3d 168 (citing Porter v. Everts' Estate, 81 Vt. 517, 71 A. 722 (1909)). We have recognized and enforced contracts to convey property after death, even when not in the specific form of a will. See Laplante v. Eastman, 118 Vt. 220, 222, 105 A.2d 265, 267-68 (1954), superseded by statute on other grounds as recognized in Couture v. Lowery, 122 Vt. 239, 244, 168 A.2d 295, 299 (1961); Pike v. Pike, 69 Vt. 535, 38 A. 265, 267 (1897); Smith v. Pierce, 65 Vt. 200, 203-04, 25 A. 1092, 1093 (1892). And we have enforced prenuptial and postnuptial agreements releasing one party's interest in the other's estate. See In re Prudenzano's Will, 116 Vt. 55, 58, 68 A.2d 704, 707 (1949); Smith & Nye v. Munsel, 94 Vt. 201, 203-07, 110 A. 12, 12-14 (1920). Given that our law permits a person to make an enforceable promise to convey property upon death, there is no reason to carve out an exception for promises made in the form of a mutual will. See 1 Page on Wills § 10.1 (2020) (noting that although "the original policy of enforcing such contracts has been questioned . . . their validity is uniformly conceded").

6

¶ 13.    Therefore, although appellant misidentified the consequences of the asserted 1997 contract for mutual wills, she is not left without a potential remedy.  Her filings reflect a claim against the estate, but do not support an order invalidating the 2006 will.

Affirmed and remanded for further proceedings consistent with this opinion.


FOR THE COURT:


_____

Associate Justice

7