VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     24-AP-057



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

### ENTRY ORDER

OCTOBER TERM,   2024

| | |
|---|---|
| In re Estate of Clifford Patterson, Jr. (Paullette Cameron\*) | } APPEALED FROM: <br> } <br> } Superior Court, Franklin Unit, <br> } Civil Division <br> } CASE NO. 23-CV-03574 <br> } Trial Judge: Samuel Hoar, Jr. |

In the above-entitled cause, the Clerk will enter:

Paullette Cameron[*] appeals the civil division's decision declining to allow decedent Clifford Patterson's purported will to probate.  We affirm.

Decedent died in December 2021.  At the time of his death, decedent owned a home and land in Swanton, Vermont, where he lived with Cameron.  In July 2022, decedent's son petitioned the probate division to open an intestate estate and appoint son as administrator.  The probate division granted son's motion for a license to sell the Swanton property in October 2022.  In May 2023, Cameron filed a motion to allow a handwritten document that she claimed was decedent's last will and testament.

The document stated, "I Clifford Patterson leave my home and property to Paullette Cameron until the day she passes or moves off the property."  Below this were written two dates, "June 10 2021" and "5/10/21," followed by the names of decedent, Cameron, and two witnesses.

Son objected to Cameron's motion, arguing that the will was not valid and had not been timely delivered to the probate division.  After a hearing, the probate division denied Cameron's motion to allow the will.

Cameron appealed to the civil division, which held a de novo hearing on the motion. Cameron presented testimony from the two witnesses whose names appeared on the will and testified on her own behalf.  The first witness, Sara Levick, testified that the document was dictated to Cameron's late daughter, Katrina Westerling, because decedent did not have good handwriting.  The document was then signed by decedent, Cameron, herself, and the other witness, Chantal Riendeau.  Levick testified that the signing took place in June 2021 and that the

---

[*] Although the civil division captioned its case differently, we use the case title used by the probate division, where the proceedings began.

May 2021 date was not on the document when she signed it. Riendeau similarly testified that the document was prepared by Westerling at decedent's direction and that he signed it. She could not recall when it was signed but believed it was in May.

Cameron testified that the document was signed in June. She testified that she, decedent, Westerling, Levick, Riendeau, and two other people were present when the document was signed. She stated that her daughter, Westerling, prepared the document because decedent had poor spelling and penmanship. Cameron testified that the June date was in Westerling's handwriting and the May date was written by Cameron. When asked why she added the May 2021 date, she stated, "We had made an appointment to go up to have this document notarized, and I wrote it on the paper by mistake. And we never kept the appointment because Clifford went fishing." She further testified that "[t]hat was just a brain thing with me. It's just a misconception. I don't know why I did it." Copies of decedent's driver's license, police department identification card, and the deed to his house, each of which had been signed by decedent, were also admitted into evidence.

At the conclusion of the hearing, the civil division found that the document was not decedent's will. It found Cameron's testimony that she mistakenly added "5/10/21" on a later date when she and decedent were going to get it notarized to be "frankly incredible." The court found that the same person who wrote the document also signed decedent's name because the two instances of decedent's name on the document were more similar to each other than to the other examples of decedent's signature. The court further found that the will was not attested to by the witnesses as required by 14 V.S.A. § 5. The court also determined that the will was not delivered to the probate division until May 2023, which further undermined its authenticity. The court therefore affirmed the probate division's decision. This appeal followed.

"To be effective, a will must be allowed in the Probate Division of the Superior Court, or by appeal in the Civil Division of the Superior Court or the Supreme Court." 14 V.S.A. § 101. We have explained that an order on a motion to allow a will "addresses . . . a very specific set of issues related to whether the instrument is or is not the will of the testator and whether it is otherwise valid." In re Est. of Holbrook, 2016 VT 13, ¶ 15, 201 Vt. 254. Like any other will, "a handwritten will must strictly adhere to statutory requirements, and its proponent bears the burden to prove that it was duly executed." In re Est. of Cote, 2004 VT 17, ¶ 19, 176 Vt. 293. As the trier of fact, it was the civil division's role to assess "the credibility of the witnesses and the weight of the evidence," and its findings will "not be set aside unless clearly erroneous." V.R.C.P. 52(a)(2).

Cameron contends that the civil division erred in disallowing the will because the will satisfied the requirements of 14 V.S.A. § 5(a). Section 5(a) requires a will to be:

> (1) in writing; (2) signed in the presence of two or more credible witnesses by the testator or in the testator's name by some other person in the testator's presence and by the testator's express direction; and (3) attested and subscribed by the witnesses in the presence of the testator and each other.

We have held that "[t]he obvious purpose of such provisions is to supply ample evidence of the decedent's testamentary intent and capacity and to prevent fraud." Est. of Cote, 2004 VT 17, ¶ 11.

2

Here, the trial court found that the will was not signed by the testator. The court's finding is not clearly erroneous. The witnesses all testified that the document was prepared by Cameron's late daughter, Katrina Westerling. The witnesses also testified that the document was signed by decedent. However, the court found that the signature looked more like the "Clifford Patterson" that appeared in the first line of the document than the signatures on decedent's driver's license, police department identification card, or the deed to the house, each of which was admitted into evidence. It therefore concluded that the same person who wrote the document also signed decedent's name. The genuineness of the signature was a question of fact for the court to decide, and the court was free to accept or reject the witnesses' testimony on this point. See Smith v. Drummond, 143 Vt. 175, 177 (1983) (explaining that trial court is free to accept or reject testimony when sitting as trier of fact). The court explained that in addition to the similarity of the two instances where decedent's name appeared on the document, it did not credit Cameron's explanation for the conflicting dates on the document. These factors, coupled with the belated presentation of the will to the probate division, led the court to conclude that it was not authentic. The court's findings were adequate to explain its decision and were supported by the record below.

Cameron argues that 14 V.S.A. § 5 permits a will to be signed in the testator's name by another person in the testator's presence and at their express direction. However, Cameron did not claim that occurred here and there was no evidence to support such a finding. The trial court's finding that decedent did not sign the document was therefore fatal to the document's validity under the statute.

Cameron also argues that the court erred in finding that there was no evidence of attestation by the witnesses. The court appeared to be referring to the lack of an attestation clause in the document itself. However, even if the finding was erroneous, the court did not rely upon it in reaching its decision, which is otherwise supported by the record. We therefore will not reverse on this basis. See Rogers v. Parrish, 2007 VT 35, ¶ 21, 181 Vt. 485 ("Erroneous or unsupported findings do not require reversal . . . unless they are shown to have been prejudicial.").

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
William D. Cohen, Associate Justice

_____
Nancy J. Waples, Associate Justice

3